In re Dennis T. REARDON, Robert J. Humphreys, David J. Haley, Charles P. Coates, III, applicants for Admission to the Delaware Bar.

Supreme Court of Delaware.

Submitted June 28, 1977.

Decided Aug. 11, 1977.

Carl Schnee and David E. Brand, of Schnee & Castle, Wilmington, for petitioner Dennis T. Reardon.

Charles P. Brandt, Wilmington, for petitioners Robert J. Humphreys and David J. Haley.

Howard M. Handelman and Jeffrey M. Weiner, of Bayard, Brill & Handelman, Wilmington, for petitioner Charles P. Coates, III.

Andrew B. Kirkpatrick, Jr. and William T. Allen, of Morris, Nichols, Arsht & Tunnell, Wilmington, for Board of Bar Examiners.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice.

After taking the 1976 Delaware Bar Examination, the petitioners were advised by the Board of Bar Examiners[1] that while they had passed all other parts of the Examination, they had failed the essay section and, therefore, failed to pass the Examination. The petitioners invoke this review of the Board's decision, asserting that a certain policy decision adopted by the Board in connection with its scoring of the Examination was arbitrary and unfair as to the petitioners, and violative of their rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

I.

There is no substantial factual dispute:

The 1976 Bar Examination consisted of 3 parts: the ethics section, the multi-state section, and the essay section. The essay section consisted of 12 questions dealing with certain subjects specified by the Board's Rules. An average score of 65% on those questions was required to pass the essay section.[2]

After the essay section had been graded, the Board perceived a troubling situation concerning Essay Question No. 8, dealing with the subject of Criminal Procedure. Among the other essay questions, the average grade ranged from 71.99 (Civil Procedure) to 61.92 (Equity); the average for all essay questions, excluding Question No. 8,

1. The Delaware Board of Bar Examiners, consisting of practicing attorneys, is an arm of this Court created and governed by Rule under this Court's inherent power to regulate the practice of law. See *In re Member of Bar*, Del.Supr., 257 A.2d 382 (1969); *In re Honey F. Golby*, Del.Supr., 375 A.2d 1049 (1977).

2. Prior to the examination, applicants were informed that a score of not less than 65% on the essay section was required in order to pass the

Examination. In this connection, the petitioners emphasize that at a pre-examination Bar review session, the Secretary of the Board stated: "All essay questions will be weighed equally." As the Board points out and the petitioners concede, however, that statement was made in response to an inquiry concerning the occasional use of double questions in the past and the giving of extra weight to such questions.

was 68.09;[3] the average grade on Question No. 8, however, was only 49.08,[4] almost 20 points below the average for all other essay questions. Also, more than 70% of those taking the Examination received a failing grade on Question No. 8, while the average failing percentage on all other essay questions was approximately 30%. Moreover, the pattern of grades revealed an extraordinary number of very low grades on Question No. 8, in striking contrast with performances in other parts of the essay section. Confronted with these facts, the Board concluded that Question No. 8 was not functioning to indicate reliably those applicants with minimum legal competence.

The Board decided to exclude the Question No. 8 grades in determining whether an applicant had received a passing grade on the essay section, except in those instances (approximately 10% of the class of 136 applicants) where an applicant's average grade would be lowered by excluding the score on Question No. 8.[5] Otherwise stated, the Board counted the score in Question No. 8 in determining the essay scores for those persons whose score on Question No. 8 was higher than the overall essay score; but not otherwise. All petitioners were in the latter category and, therefore, were credited with their Question No. 8 scores in the computation of their overall examination results.

As a result of the decision, the Board passed 27 applicants who would otherwise have failed both the essay section and the Examination if their Question No. 8 scores had not been disregarded. None of the petitioners was among the 27; each would have failed the Examination if no action at all had been taken by the Board in connection with the Question No. 8 problem. However, as a result of the Board's deci-sion, certain applicants passed the Examination whose average score on all 12 essay questions was lower than the average score of the petitioners; and, as another result, certain applicants who had failed the multistate section of the Examination[6] were credited with passing the essay section by reason of the Board's decision and, under the prevailing Rule, have been since permitted to re-take the multi-state section alone.

## II.

The petitioners contend that the Board's action in the handling of Question No. 8 was, as to them, arbitrary, manifestly unfair, and violative of their due process and equal protection rights and the Board's Rules.

The petitioners do not contend that the Question No. 8 problem required no action by the Board; it is the nature of the action taken by the Board, not the fact of action itself, which petitioners challenge. Reduced to its essence, the petitioners' argument is that it was unfair and wrong for the Board to adopt a scoring procedure which had the effect of passing certain other applicants, who received fewer points on all 12 essay questions (including Question No. 8) than did the petitioners, without formulating that action in such a way as to pass the petitioners as well. The petitioners argue that two other scoring techniques would have been more fair and proper, either of which, they say, would have resulted in their passing the Examination: (1) "Curving" all Question No. 8 scores; or (2) elimination of the lowest grade made by each petitioner in the essay section.

## A.

■ First, as to the petitioners' contention that the handling of Question No. 8

---

**3.** This was in line with past experience of the Board; e. g., the average for all essay questions in the 1973, 1974, and 1975 Examination was 68.86.

**4.** This was aberrational in that, in the 1973–1975 Examinations, no essay question received an average grade below 60.

**5.** The Board's decision about the Question No. 8 problem was made while all examinees were still anonymous under governing procedures. Hence, there is no argument here, as there is in so many bar examining cases, of prejudice or improper motive.

**6.** None of the petitioners failed the multi-state section.

was arbitrary and manifestly unfair as to them:

The Board's action was not arbitrary. It is clear on the record before us that the Board was deeply concerned about the difficult problem which confronted it and about the consequences of its decision. Clearly, the Board acted carefully and exercised deliberate judgment after due consideration of the several relevant factors involved, including the nature of Question No. 8, the number of applicants who failed it, the average performance on the Question, and the pattern of the grades thereon as compared to other questions. There is ample evidence of the Board's intense concern and determination to reach the fairest possible solution under the circumstances. Arbitrariness is certainly not present on this record.

The charge of manifest unfairness to the petitioners, rising to abuse of discretion in the "judgment call" the Board was obliged to make, has not been established. In our view, none of the petitioners' contentions counterbalance the facts that they were not deprived of the score they actually made on Question No. 8, and that if the Board had taken no action at all as to Question No. 8, the petitioners would have failed the Examination nevertheless. We find that the scoring technique adopted by the Board in disposing of the Question No. 8 problem was reasonable, proper in purpose, and within the bounds of its sound discretion.

Accordingly, we will not substitute our judgment for that of the Board. With the benefit of hindsight, reasonable minds may differ, perhaps, as to some other solution consistent with the Board's primary function which may have resulted in a greater degree of fairness to the petitioners. Tests, like taxes, can never be perfect and completely fair to all. But the petitioners have not been able to present any such solution to our satisfaction.

▮▮▮▮▮▮ The primary function of the Board of Bar Examiners is to measure professional competence; the purpose of the Bar Examination is to distinguish those applicants who appear to have the minimal competence for the practice of law. The scoring techniques suggested by the petitioners, as being more reasonable and fair than those adopted by the Board, are not more consistent with those essential functions of the Board and the Examination. We find no sufficient basis for overriding the Board's view that the technique of "curving" all Question No. 8 grades would not be rationally related to the Board's mission of determining professional competence. In this connection, the Board stated:

> " * * * if one has reasonable grounds for believing that question 8 was not fairly testing what it attempted to test, it does not seem likely that merely by increasing the numerical grades assigned to each answer one could arrive at a meaningful passing number. Furthermore, since the grade on each essay question is ultimately averaged to derive a general score which determines whether one passes the essay portion of the examination, merely to add points to grades assigned question 8 would, in effect, be to count question 8—a question of suspect validity—more heavily than any other question. As a result, the curving of the grades seem an inappropriate technique to be employed in these circumstances." [7]

It appears that grading Question No. 8 on a curve would have permitted more persons to pass the question, having the anomalous result of according more credit to a question properly deemed unreliable. The Board contends [8] that if the Board's motiva-

---

7. In *Richardson v. McFadden* (4 Cir.) 540 F.2d 744 (1976), the Court referred to the use of curving system and said:

> "We tend to agree . . . that, if this . . . system is utilized . . . it would be almost a matter of pure luck if the '70' [the passing grade] thereby derived corresponded with anybody's judgment of minimal competence." 540 F.2d at 750.

8. The Board's argument in this connection goes as follows:

> " * * * a basic assumption of the curving technique is that on each question, or on the examination as a whole if the technique were to be applied to the examination generally, grades will fall over some 'normal' distribution, e. g. 10% with grades above 75, 10% below 65 (failing) and the remainder distributed be-

tion was merely to pass more people on Question No. 8, curving might be appropriate; but that in view of the Board's mission of measuring minimal professional competence, curving would have been arbitrary and irrelevant. We agree.

The petitioners' suggested alternate of excluding the lowest score made by each petitioner in the essay section, suffers from the same fundamental defect in that it is inconsistent with the basic function of the Board and of the Examination. Again, if the Board sought merely to recommend the admission of more applicants, it might be said that this suggested technique would be rationally related to attainment of that goal. Here, however, the Board properly sought to avoid reliance upon a question the grades of which were viewed as unreliable to test minimal competence. The Board argues that there is no suggestion that that situation obtained as to any other question, and that petitioners offer no rationale as to how the elimination of low scores on reliable questions can be related to the objective of testing professional competence. We agree.

The petitioners rely especially upon *Hooban v. Board of Governors,* Wash.Supr., 85 Wash.2d 774, 539 P.2d 686 (1975), wherein it is stated:

"The general rule is that courts will not set aside the determination of bar examiners as to an applicant's legal proficiency unless there is a showing of fraud, coercion, arbitrariness or manifest unfairness. See generally, *Petition of Pacheco,* 85 N.M. 600, 514 P.2d 1297 (1973); *Application of Peterson,* 459 P.2d 703 (Alaska 1969); *In re Monaghan,* 126 Vt. 193, 225 A.2d 387 (1967); *Staley v. State Bar of California,* 17 Cal.2d 119, 109 P.2d 667 (1941). Of course, if the denial of the right to practice law were based upon fraud, coercion, arbitrariness or manifest unfairness, then the basis for finding the applicant lacking in proficiency would be

highly dubious and this could constitute a denial of Due Process. *Schware v. Board of Bar Examiners of New Mexico,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957)."

The controlling rule is well stated in *Hooban.* See generally Annot: *Court Review of Bar Examiners Decision on Applicant's Examination,* 39 A.L.R.3rd 719. Approving and applying the general rule as we do, we conclude that the petitioners may not prevail on the facts of this situation.

### B.

The foregoing discussion relates closely to the constitutional challenges raised by the petitioners.

■ Bar examination procedures are always reviewable to determine if there has been any contravention of the Due Process or Equal Protection Clause. *Schware v. Board of Bar Examiners of New Mexico,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). The constitutional inquiry here is whether there is some reasonable basis for the challenged act, some "rational connection" between it and a legitimate State interest.[9] The view taken by the Court in *Tyler v. Vickery* (5 Cir.), 517 F.2d 1089, 1101 (1975) is apposite:

"Since the Georgia bar examination does not establish a constitutionally suspect racial classification and no claim is made that a fundamental interest is involved, there is no legal basis for applying the compelling state interest test and the proper standard of review becomes the rational relationship test utilized by the district court." 517 F.2d at 1101.

■ As we have indicated, we find that the procedures adopted by the Board in disposing of the Question No. 8 problem were founded upon reason and rationally furthered a legitimate Board purpose. The

---

tween. If grades do not fall into this pattern, they are 'curved' or rearranged either upward or downward until the 'normal' percentage of students either pass or fail. This technique seems obviously inappropriate in this context, where the purpose is not to operate on a 'quo-

ta' basis but simply to determine who does and does not have minimal competence."

9. It is not contended that a Fourteenth Amendment "fundamental right" is involved here. See *Ostroff v. New Jersey Supreme Court* (D.N.J.), 415 F.Supp. 326 (1976).

Constitution does not require a perfect test nor does it require perfect examiners; it requires only a rule of rationality. Finding that test met, we hold that the Due Process and Equal Protection rights of the petitioners were not impinged.

The petitioners' reliance upon *Richardson v. McFadden* (4 Cir.), 540 F.2d 744 (1976) and *Pachero v. Pringle* (D.Colo.), C.A. C–5219 (1975) is misplaced. Those cases dealt with alleged racial discrimination, a "suspect classification" for purposes of Equal Protection Clause analysis.

### III.

■ Finally, the petitioners contend that the course adopted by the Board violated its Rules and prior instructions to all applicants.

This argument is woven about (1) Board Rule BR–52.3(d); [10] (2) the announcement that a score of not less than 65% was necessary on the essay section in order to pass; and (3) a statement on the examination cover sheet that the essay section consisted of 16 questions (including 4 on the topic of ethics).

We hold that neither Board Rule BR–52.-3(d) nor any other Rule was amended by the specified announcement and statement. Accordingly, we find no merit to this contention.

### IV.

In an effort to rectify, insofar as possible, any unfairness suffered by the petitioners as the result of testing procedures which, by their very nature, are imperfect at best, we shall suspend the Rules of the Court and the Board sufficiently to permit the petitioners to re-take the essay portion of the Examination without being required to re-take the entire Examination as now required under the Rules. Such special action is warranted, we think, under the circumstances here presented.

---

**10.** Board Rule BR–52.3(d) requires the Board to:

"[D]etermine in advance . . . the manner in which pass/fail determinations will be made including the manner in which the MBE portion of the examination and the essay portion of the examination will be combined (the 'scoring method') . . . .".