**In re Edward E. FISCHER, Jr., Applicant for Admission to the Delaware Bar, Petitioner Below, Appellant.**

Supreme Court of Delaware.

Submitted May 12, 1980.

Decided May 27, 1980.

Opinion Jan. 23, 1981.

Edward E. Fischer, Jr., pro se (Argued).

Arthur G. Connolly, Jr., Wilmington (Argued) and Richard A. Levine, Wilmington, for the Board of Bar Examiners of the State of Delaware.

Before HERRMANN, C. J., and DUFFY and QUILLEN, JJ.

PER CURIAM.

The following statement of facts is taken largely from the petitioner's opening brief. The petitioner, Edward E. Fischer, Jr., sat for the 1979 Delaware Bar Examination. Rule BR–52.4 of the Board of Bar Examiners provides in part:

"(c) An applicant shall be deemed to have passed the bar examination by any one of the following minimum standards:

(i) A scaled score of 130 on the MBE and an average of 65.0 on all the essay questions on the bar examination; or

(ii) A scaled score of 155 on the MBE without regard to the score on the essay questions on the bar examination; or

(iii) An average of 75.0 on all the essay questions on the bar examination without regard to the score on the MBE."

Petitioner scored 66.75 on the essays and 71.50 on the ethics portion of the test but scored 129 on the MBE, one point below the minimum of 130. As petitioner had failed the bar examination in 1977 and 1978, under BR–52.8, he is deemed to have taken the exam three times, the final limit under that rule. The rule provides in part:

"(a) No applicant shall be permitted more than 3 opportunities to pass the legal ethics examination and the bar examination."

Petitioner contends that this situation works a manifest unfairness under the circumstances, as he feels he is, despite the one point failure on the MBE, minimally competent to practice law in Delaware. Petitioner also asserts that the three time re-examination limit has no rational relationship to the compelling state interest in maintaining a competent bar. This limit works a particular unfairness in this instance, he claims, as in 1977 petitioner was involved in an automobile accident four weeks before the bar examination and was placed in a difficult position as to whether or not he should take the examination and, in essence, waste a chance. It is petitioner's position that the Court should suspend the rules to permit petitioner to be admitted to the Delaware Bar. By letter dated May 27, 1980, accelerated due to the imminency of the 1980 Bar Examination, the Court advised the petitioner and the Board that the Court had decided:

"(1) To deny the appeal for an Order that a Certification of Admission to the Delaware Bar be delivered to the petitioner below, appellant.

(2) To grant the appeal for an Order suspending in this case the Rule establishing the three-time limit on bar re-examination, on the condition, however, that the petitioner below, appellant take a bar review course before sitting for re-examination."

The Court further advised the parties that an opinion confirming the foregoing rulings would be forthcoming. By letter dated June 5, 1980, the Court, by denying a letter motion for reconsideration, made it clear that petitioner must take "the entire Bar Examination" in accordance with the normal practice on re-examination. This opinion confirms such rulings.

■ We turn initially to petitioner's argument that the denial of his admission to the Delaware Bar based on a single point deficit on the MBE portion of the Bar Examination is manifestly unfair in petitioner's particular situation. The Court recognizes the disappointment, and indeed the agony, of an applicant for admission to the Delaware Bar in petitioner's situation. But there are two answers to the argument which we state briefly, believing that no elaboration can assist the explanation or lessen the impact in an individual case.

First, and generally, in any test, there obviously must be a passing line. We are satisfied at this time, in the language of the Board's brief, "that the requirement of a scaled score of 130, first adopted for the 1977 Examination, represents as accurate as possible a measure of the level of minimum competence necessary for admission to the Delaware Bar." * Notwithstanding all the questions that may be raised about standardized tests, we do not believe that this is the time to lower the standards for admission to the Delaware Bar. If we glean any trend or tenor of commentary, it is toward more strict admission requirements. Thus, a scaled score of 129 on the MBE cannot constitute a passing grade in Delaware.

Second, the petitioner relies on certain health problems he had at the time of the 1977 Examination when his MBE mark was 125. But the situation is admittedly not comparable to that in *In Re Golby*, Del. Supr., 375 A.2d 1049 (1977), wherein petitioner was suffering a terminal illness which necessitated a course of radiation therapy and a continuing course of chemotherapy. Without further elaboration we only note that the *Golby* case must be con-

* The Board's brief points out that "figures from Educational Testing Service [show] that of all the MBEs given throughout the country in 1978 and 1979, 73.9 percent of the applicants received marks of 130 or higher."

sidered as one based on unique medical circumstances. We do not minimize the problems suffered by the applicant here, but, in light of the multiple opportunity to take the Delaware Bar Examination and the liberty of the applicant to choose when to take it, neither the Board nor the Court can undertake, as a general function, the granting of bar admissions on waiver of minimum competence standards.

█ We turn to the petitioner's second argument that the rule imposing the limit on bar examination re-examination is not rationally related to the compelling interest of the State of Delaware in insuring the maintenance of a competent bar. *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). We view the petitioner's argument as a federal constitutional argument involving both the equal protection and due process clauses of the Fourteenth Amendment. We also view it as a substantial argument involving the ability to earn a living in a profession. See *Younger v. Colorado State Board of Law Examiners*, D.Colo., 482 F.Supp. 1244, *rev'd*, 10th Cir., 625 F.2d 372 (1980). We decline to reach the constitutional question, either as a facial matter or as applied in this case, because we determine, as a matter of discretion, that the petitioner, assuming he otherwise qualifies, should be permitted to take the Delaware Bar Examination again if he takes a bar review course before sitting for re-examination, a condition we deem reasonable.

The policy of a limitation on re-examinations has been subject in recent years to general discussion in national legal circles. In late 1979 and early 1980, Board of Bar Examiners Rule BR–52.8 was reviewed by a Board Subcommittee on Reexaminations and the Board of Bar Examiners. No change was recommended to the Board by the Subcommittee or to this Court by the Board. But the thoughtful Subcommittee report presented the Board with the following alternative proposal:

"Alternatively, if some modification is deemed appropriate by the Board, the Subcommittee recommends that BR–52.8 be amended so as to permit an applicant who has failed a third examination to be admitted to a fourth examination upon permission of the Board of Bar Examiners. The granting of such permission would require a showing of 'good cause' by the applicant and should be conditioned upon the applicant attending, following his or her third examination and prior to the fourth examination, a bar review course approved by the Board of Bar Examiners."

█ We recognize the force in the argument that three examinations should be sufficient to demonstrate minimum professional competence, especially with expanded post-examination review procedures. We also recognize the force in the argument that three times should be sufficient to eliminate any aberrations in any one year. But there are physical, emotional and other good reasons present in Bar Examinations which handicap some applicants. Special effort can perhaps overcome them in promising cases. The petitioner here has successfully completed study at a fine accredited law school where he contributed to the law review. Prior to taking his current corporate employment, he had achieved employment in a law clerk capacity with three Delaware law firms and the State of Delaware, notwithstanding his difficult ordeal with regard to his nonadmission to the Delaware Bar. He has improved his bar examination performance to the brink of success and there is good reason to believe he can successfully get by this last hurdle. We find he has shown good cause for a fourth examination.

We think further that the petitioner's case demonstrates the wisdom of the alternative proposal considered by the Board's Subcommittee. We therefore ask the Board to prepare an amendment to the rules for the Court's consideration embodying the alternative proposal. In so doing, we recognize that the concept of "good cause" itself may be subject to legal attack and ask the Board to consider the difficult task of a definition of that phrase for purposes of a fourth bar examination. We find

no impediment to the requirement that an applicant for a fourth examination attend an approved Bar Review Course since we think it reasonable to require an intensified review for such applicants by nondiscriminatory treatment at a modest cost. But we of course would welcome any comment of the Board on that requirement as well.

Insofar as the instant petitioner is concerned, we hereby suspend Rule BR–52.8 establishing the three-time limit on bar re-examination and direct the Board to permit the petitioner to take the entire Bar Examination a fourth time if the petitioner takes a bar review course satisfactory to the Board before sitting for re-examination.