IN THE SUPREME COURT OF THE STATE OF DELAWARE

IN RE APPLICANT 146 TO THE  §
2021 DELAWARE BAR           §    No. 384, 2021
EXAMINATION                 §

Submitted: June 29, 2022
Decided:   August 17, 2022

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices, constituting the Court *en Banc*.

*PER CURIAM:*

## **ORDER**

(1)     The COVID-19 pandemic forced the Delaware Board of Bar Examiners to administer the 2021 Delaware Bar Exam remotely.  Before the Bar Exam date, the Board twice sent instructions to applicants covering how and when to report technical difficulties during the remote administration of the Bar Exam, including an instruction to restart their computers.  Many applicants experienced software problems during the Bar Exam.  If applicants encountered/experienced technical issues that required a computer restart confirmed by the testing software program, the Board increased their final Bar Exam score to compensate for the difficulties.

(2)     Applicant No. 146, who we will refer to as "the Applicant," did not receive a passing grade for the 2021 Bar Exam and petitioned the Board for relief.  Although he did not have to restart his computer and did not report technical

problems in a timely manner in compliance with the Board's instructions, he nonetheless requested that the Board increase his score as it did for applicants who restarted their computers. He also took issue with how the Board addressed his request for special accommodations to use physical scratch paper during the Bar Exam. As a remedy, he asked the board to adjust his score to a passing grade or give him an opportunity to prove his fitness to practice law independent of passing the Bar Exam. The Board denied his petition.

(3)     On appeal, the Applicant argues that the Board's refusal to increase his score for technical difficulties violated the Due Process and Equal Protection Clauses of the United States Constitution. He also renews his claim that the Board denied him reasonable accommodations when it required him to take the Bar Exam in person if he wanted to use physical scratch paper.

(4)     We have the utmost sympathy for the Applicant, and all applicants who had to contend with technical difficulties during the 2021 remote Bar Exam. But the remedy the Applicant seeks—waiver of the Board's and the Court's Bar admission requirements and a hearing to demonstrate his fitness for Bar admission—is not a remedy this Court will award. The Court will not revisit an applicant's grade or waive admission requirements. And the Applicant's remedy for defects in exam administration is to retake the Bar Exam free from any legal deficiencies. In any event, we find that the Board's grading procedures for the 2021 Bar Exam withstand

constitutional scrutiny, and the Applicant did not timely appeal his scratch paper accommodation request. Thus, the Board's decision is affirmed.

(5) The Applicant attended an ABA-accredited law school from 2018–21 and applied for admission to the Delaware Bar following graduation. On March 15, 2021, the Board decided that the Bar Exam would be offered remotely due to COVID-19 safety concerns with an in-person test. When announcing the July 2021 Bar Exam, applicants were directed to the Board's website for policies and procedures about the remote testing conditions. Among other requirements, and for security reasons, applicants could not eat or drink unless the Board approved an accommodation, could not use physical scratch paper, and had to be alone while taking the exam. The website also had a frequently asked questions ("FAQs") section that explained in detail how to handle a technical issue during the Bar Exam, and when and how to file an incident report to document the problem.

(6) The Applicant filed an Application for Testing Accommodations on the day that the Board announced the remote exam. After some back and forth, on June 11, 2021, the Board granted the Applicant a fifty-percent extension of time to complete the Bar Exam but denied his request for a private room because the new remote exam format allowed him to take the Bar Exam in a location of his choosing. The Applicant then made additional informal requests for more accommodations,

3

and in response, the Board instructed the Applicant to file a second Application for Testing Accommodations with the necessary documentation.[1]

(7) The Applicant filed the second application on June 17, 2021, and requested the presence of his service animal while testing, use of a clear plastic water bottle, and use of physical scratch paper. The Board responded the next day and denied the application because it "lack[ed] sufficient documentation and objective information to confirm that [his] diagnosis supports the aforementioned accommodations."[2]

(8) On June 27, 2021, the Applicant filed a petition requesting a hearing before the Board to review the June 17 order denying some of his requested accommodations. A Board hearing panel held an evidentiary hearing on July 15, 2021. The Applicant presented evidence, including an expert report, supporting the need for special accommodations to address his claimed disabilities. The hearing panel granted each of the Applicant's requested accommodations but required the Applicant to take the Bar Exam in person at a testing site in Wilmington, Delaware if he wanted to use physical scratch paper.

---

[1] These informal requests apparently were made by email after the April 1 deadline had passed for filing accommodation applications. App. to Opening Br. at A3, A33. Despite what appear to be untimely requests, the Board permitted the Applicant to file a second application. *Id.* at A33.
[2] *Id.* at A35.

4

(9)     The Applicant contacted the Board to seek clarification of its decision. He expressed concern about taking the Bar Exam in person because he lived in Pennsylvania and would have to travel about thirty miles to the testing site.  In response to his concerns, the hearing panel clarified its ruling and stated that he could choose to take the Bar Exam in person at the testing site and use physical scratch paper or take the Bar Exam remotely without the physical scratch paper, and his decision would not affect his other accommodations.  The Applicant chose to forgo use of physical scratch paper and take the Bar Exam remotely.  He did not seek review of the hearing panel's final decision regarding the use of physical scratch paper.

(10)   On July 21, 2021, a few days before the Bar Exam began, the Board sent an email to all applicants that explained again how to deal with technology issues during the Bar Exam.  The Board advised applicants to "hold[] down the power button [of a test taker's laptop] for 15 seconds, wait[] a few seconds and then hold[] the power button again for 15 seconds to reboot."[3]  The email referred applicants to the remote exam testing conditions document and the FAQs on the Board's website and  reminded them to review all rules and conditions before taking the Bar Exam.

_____

[3] *Id.* at A73.

(11)   The Board's notices also directed applicants to "file an Incident Report Form to report of [sic] any irregularity that occurs during the bar exam's administration."[4]   They also said that "[i]ncident reports are due by 11:00 p.m. on the day that the incident occurs . . . ."[5]   Finally, the documents sent by the Board stated that "[a] failure or malfunction of an applicant's computer or software, or any other equipment, loss of power or inability to the [sic] access the internet will not be grounds for any reconsideration or modification of an applicant's score."[6]

(12)   The Applicant took the Bar Exam and, according to the ExamSoft software, did not restart his computer during the test.  He did not file any incident reports over the three testing days and did not report any technology issues immediately following the Bar Exam.

(13)   On October 21, 2021, the Board informed the Applicant that he did not pass the Bar Exam.  At the same time, after consulting with a grading expert, the Board informed all applicants that it had modified its scoring because a significant number of applicants had experienced technical issues.  The Board awarded point increases to applicants who "experienced technical issues with the testing software

---

[4] *Id.* at A84.
[5] *Id.* at A85.
[6] *Id.* at A75.

6

that required a computer restart while the testing session was in progress, as recorded by ExamSoft, the testing platform."[7]

(14) On October 27, 2021, months after the deadline set by the Board for reporting technical difficulties, the Applicant filed a petition with the Board along with an Incident Report Form dated October 21, 2021. The Applicant explained that he experienced "[m]ultiple instances of gray, inability to click/type, flickering & frozen screen(s) Delayed [sic] buffering, long load time between questions."[8] The Applicant alleged further that he "was not afforded an opportunity to assert or document these issues[,]" "was not provided notice that the post-exam survey or report would be his only opportunity to assert such claims[,]" and "was not provided notice that score adjustments due to the technical issues was an available remedy."[9] The Applicant requested "an adjustment to his exam score which reflects the technical issues he and others experienced or a hearing and an opportunity . . . to assume the burden of proving fitness to practice law . . . ."[10]

(15) The Board denied the petition because it could not grant the requested relief. First, the Board relied on its own rules, which make all grades final once posted publicly.[11] Thus, the Board had no authority to review the Applicant's score.

---

[7] *Id.* at A101.
[8] *Id.* at A99.
[9] *Id.*
[10] *Id.* at A98.
[11] Rules of the Board of Bar Examiners of the State of Delaware, Rule 29 ("Board Rule" or "BR").

Second, the Board found that the Applicant was not entitled to a hearing to prove his fitness to practice law because he did not pass the Bar Exam, and "obtaining a passing score on the Delaware Bar Exam is a requirement for licensure, per Supreme Court Rule 52(a)(7)."[12]  The Board noted that applicants received a scoring adjustment only if the ExamSoft software reported a restart of the applicant's computer during the Bar Exam, and ExamSoft did not report that the Applicant's computer was restarted.  The Applicant has appealed the Board's denial of his petition.

\* \* \*

(16)   As a threshold matter, the Court must address whether the Applicant's request for review of his Bar Exam score is appealable to the Board and then to the Supreme Court.  Under Board Rule 29, "any decisions of the Board with respect to a specific grade or grades assigned to any individual applicant, once posted according to Rule 16, are final and not subject to review by the Board."  Under Supreme Court Rule 52(e):

> Any person aggrieved by final action of the Board may appeal to the Court for relief if such action affects the substantial rights of the person claimed to be aggrieved, except that decisions of the Board with respect to a specific grade or grades assigned to any individual applicant are final and shall not be subject to review by the Court.

---

[12] *Id.* at A101.

8

(17) Relying on Board Rule 29, the Board found it could not revisit the Applicant's score. Under Supreme Court Rule 52(e), we are in the same position. The Court will not review an applicant's Bar Exam grade.[13] Further, under Supreme Court Rule 52(a)(7), a passing Bar Exam score is a requirement for admission to the Delaware Bar, and we will not waive that requirement.[14] Thus, a hearing on the relief requested by the Applicant would have been pointless.

(18) The Applicant has offered only a weak response to the express prohibition against revisiting his final score. He argues that he is not asking for a re-grading, but a "scoring adjustment" based on technical difficulties during Bar Exam administration. There is, however, no difference between "grading" and a "scoring adjustment." The Board's grading adjustment due to technical difficulties was part of the Board's grading process and is therefore final. Because the Applicant did not achieve a passing Bar Exam score, and a passing score is a Bar admission

---

[13] *See Applicant No. 009 v. Bd. of Bar Exam'rs of Del. Supr. Ct.*, 2003 WL 22416043, at *1 (Del. Oct. 20, 2003) (relying on then Supreme Court Rule 52(f)—the rule that is now Supreme Court Rule 52(e)—to deny applicant's petition claiming the Board's grading was arbitrary); *In re Kennedy*, 2003 WL 1987984, at *1 (Del. Apr. 28, 2003) (explaining that this Court has repeatedly considered and rejected requests to review Bar Exam scores); *Applicant No. 26*, 780 A.2d at 254 (denying an applicant's petition requesting a review of her Bar Exam scores under then Supreme Court Rule 52(f)—the rule that is now Supreme Court Rule 52(e)).

[14] *Petition of Applicant No. 5 to 1994 Del. Bar and Prof'l Conduct Examinations*, 658 A.2d 609, 612 (Del. 1995) ("This Court has observed that 'neither the Board nor the Court can undertake, as a general function, the granting of bar admissions on waiver of minimum competence standards.'" (quoting *In re Fischer*, 425 A.2d 601, 603 (Del. 1980))). We have explained in another decision issued today, *In re Murphy*, No. 398, 2021, why *In re Rubenstein*, 637 A.2d 1131 (Del. 1994) and *Petition of Golby* 375 A.2d 1049 (Del. 1977) are of no help to the Applicant.

requirement, he failed to meet the minimum competence standards required for admission to the Delaware Bar.

(19) Further, only Board action that affects an applicant's substantial rights is appealable to our Court.[15] While it is admittedly cold comfort, the Applicant can retake the Bar Exam. An applicant's substantial rights are unaffected when he has another opportunity to take the Bar Exam.[16] Thus, the Board correctly denied the Applicant's petition.

* * *

(20) The Applicant also claims that the Board's exam administration violated the Due Process and Equal Protection Clauses of the United States Constitution. He argues that the Board applied scoring adjustments in an unfair manner when it adjusted only the scores for applicants who performed a computer restart. The Applicant claims that his technical issues were similarly serious, although he did not restart his computer, and refusing to grant him a scoring adjustment denied him "equal protection under the law and [was] a violation of his due process rights."[17] He also argues on appeal that the Board's decision to deny his

---

[15] "Any person aggrieved by final action of the Board may appeal to the Court for relief if such action affects the substantial rights of the person claimed to be aggrieved, except that decisions of the Board with respect to a specific grade or grades assigned to any individual applicant are final and shall not be subject to review by the Court." Supr. Ct. R. 52(e).
[16] *Applicant No. 009*, 2003 WL 22416043, at *1.
[17] Reply Br. at 1.

petition to challenge the disparate application of adjustments denied him due process.

(21)   The Board responds that, in addition to making only conclusory constitutional arguments, the Constitution requires only that the Board's procedures are rationally related to the testing purpose.[18]  According to the Board, because its actions were not arbitrary, fraudulent, or unfair, the scoring adjustment for applicants who restarted their computers was rationally related to the Board's goal of administering a fair exam that accounted for the challenges of remote administration due to the COVID-19 pandemic.

(22)   Even though "[b]ar examination procedures are always reviewable to determine if there has been any contravention of the Due Process or Equal Protection Clause[,]"[19] we note that the remedy for constitutional or statutory violations is not waiver of the passing score requirement and admission to the Bar, the only remedy the Applicant requests.  "Neither the Board nor the Court can undertake, as a general function, the granting of bar admissions on waiver of minimum competence

---

[18] Answering Br. at 32 (citing *Petition of Applicant No. 5*, 658 A.2d at 611; *In re Reardon*, 378 A.2d 614, 618 n.9, 619 (Del. 1977)).
[19] *In re Reardon*, 378 A.2d at 618.

standards."[20]  If there were constitutional or statutory errors in administering the Bar Exam, the Applicant's remedy is to re-take the Bar Exam free from those errors.[21]

(23)    In any event, we are unpersuaded by the Applicant's constitutional claims.   When the Board administers the Bar Exam, the "Constitution does not require a perfect test nor does it require perfect examiners; it requires only a rule of rationality."[22]  Unless the Board acted in an arbitrary, fraudulent, or unfair manner, the Board's scoring adjustment process will withstand rational basis scrutiny.[23]  And the Board's actions withstand this scrutiny if there is "some reasonable basis for the challenged act, some 'rational connection' between it and a legitimate State interest[.]"[24]

(24)    The Board was faced with an unprecedented challenge.  At the time of the 2021 Bar Exam, the COVID-19 pandemic continued to cause serious illness and death.  In-person gatherings were discouraged.  The Board had an unenviable decision to make—cancel the Bar Exam again as it had done in 2020 or administer the Bar Exam remotely for the first time.  It chose the latter.  Anticipating difficulties

---

[20] *Petition of Applicant No. 5*, 658 A.2d at 612 (quoting *In re Fischer*, 425 A.2d at 603).
[21] *See In re Fischer*, 425 A.2d at 603 (examining the petitioner's due process claim and stating "[w]e decline to reach the constitutional question, either as a facial matter or as applied in this case, because we determine, as a matter of discretion, that the petitioner, assuming he otherwise qualifies, should be permitted to take the Delaware Bar Examination again . . . .").
[22] *In re Reardon*, 378 A.2d at 619 (considering both Equal Protection Clause and Due Process Clause claims).
[23] *Id.* at 619.
[24] *Id.* at 618.

with a remote administration, the Board adopted procedures to report technical problems. Unfortunately, technical issues were common. The Board responded by drawing a cutoff for verifiable problems (computer re-start) and worked with an expert in high stakes standardized licensing exams to adjust the scoring procedures in a way that "reasonably and appropriately account for the impacts to affected applicants while maintaining the integrity and fairness of the test for all examinees."[25] The Board's method for adjusting scores was reasonable considering the unusual circumstances surrounding the 2021 Bar Exam and the need for a verifiable yardstick for making adjustments. And they were rationally related to the legitimate interest of accounting for problems with remote testing while ensuring a valid test for minimum competence to practice law in Delaware. Thus, the Board did not violate the Applicant's rights under either the Equal Protection or Due Process Clauses.[26]

\* \* \*

(25) Finally, the Applicant argues that the Board denied him reasonable accommodations when it required him to take the Bar Exam in Wilmington or forego the use of physical scratch paper. The Board issued its decision on the Applicant's

---

[25] *Id.* at A91.
[26] *See also In re Kennedy*, 2003 WL 1987984, at *1 (rejecting a request by petitioner to review Bar Exam answers and holding that "we continue to find no violation of procedural or substantive due process in the manner in which the Delaware Bar examination is graded and reviewed.").

accommodations on July 16, 2021. This appeal—the first time the Applicant raised any challenge to the Board's scratch paper decision—was filed on December 1, 2021.[27] The Applicant did not timely appeal the physical scratch paper decision within the deadlines set by the Board's rules or this Court's rules.[28] Thus, we lack jurisdiction to consider the physical scratch paper accommodation issue.[29]

NOW, THEREFORE, IT IS ORDERED that the Board of Bar Examiner's decision is AFFIRMED.

---

[27] The petition did not raise the Board's failure to provide reasonable accommodations. App. to Opening Br. at A96–99.

[28] BR 15(d)(iii) ("The applicant may appeal the decision of the Hearing Panel by filing a Notice of Appeal with the Supreme Court no later than ten (10) days after the date of the Hearing Panel's written decision."); Supr. Ct. R. 52(e) ("The appeal shall be commenced by serving 2 copies thereof upon the Chair and the Executive Director of the Board and by filing the original and 1 copy with the Clerk of the Court in compliance with Rule 7, such service and filing to be accomplished within 30 days of the action of the Board.").

[29] Even if we ignore the jurisdictional issue, we still find the Applicant's accommodations challenge lacking. The Americans with Disabilities Act (the "ADA") requires reasonable accommodations for bar applicants with disabilities that can limit their ability to perform well on the Bar Exam. While the ADA requires reasonable accommodations for disabled individuals to take the examination, the "integrity of the examination process" is an important factor that the board should consider when making reasonable accommodations. *Petition of Rubenstein*, 637 A.2d at 1135–36. The Board had legitimate security concerns with the use of physical scratch paper and remote administration of the Bar Exam. And the Applicant would have had to travel to the Wilmington exam site regardless if the Bar Exam had been offered in person and he used the private room accommodation.