In re Gary Frank PETTY, Applicant for Admission to the Delaware Bar, Petitioner, Appellant.

Supreme Court of Delaware.

Submitted June 19, 1979.
Decided Jan. 17, 1980.

N. Maxson Terry, Jr., of Terry, Terry, Jackson, Terry & Wright, Dover, for petitioner.

William Poole, of Potter, Anderson & Corroon, Wilmington, for the Board of Bar Examiners.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

PER CURIAM:

Gary Frank Petty (petitioner) is a candidate for admission to the Delaware Bar. He failed the Examinations given in 1977 and 1978 and, for that reason, the Board of Bar Examiners (Board) refused to certify that he is qualified for admission to our Bar. Petty has filed a petition in this Court for an order which would, in effect, entitle him to admission to the Bar. The Board opposes the petition.

## I

To qualify for admission to the Bar of this State, a candidate must meet the minimum standards fixed by the Board of Bar Examiners Rules which are stated in *BR–52.4(c)*, as follows:

"An applicant shall be deemed to have passed the bar examination by any one of the following minimum standards:

(i) A scaled score of 130 on the MBE[1] and an average of 65.0 on all the essay questions on the bar examination; or

(ii) A scaled score of 155 on the MBE without regard to the score on the essay questions on the bar examination; or

(iii) An average of 75.0 on all the essay questions on the bar examination without regard to the score on the MBE."

In addition, every applicant must pass a separate examination on Legal Ethics by achieving a score of not less than 65. *BR–52.3*. See *In re Hudson*, Del.Supr., 402 A.2d 369 (1979).

Petty sat for the 1977 Bar Examination, which was given in August of that year. In that Examination he achieved a score of 71.5 in Ethics (the passing minimum was 65) and a score of 70.4 in the Essay Examination (the passing minimum was 65); but on the MBE, he received a score of 119,

1. "MBE" is the Multistate Bar Examination which is administered on a national basis by the National Conference of Bar Examiners. All applicants in all States which use the MBE take the same test at about the same time.

which was less than the required minimum of 130.

In February 1978, Petty passed the Pennsylvania Bar Examination by achieving a score of 137 on the MBE.

In July 1978, Petty again sat for the Delaware Examination and, at that time, he reversed his 1977 performance: he passed the MBE with a 136 score but failed the Essay Examination.

Returning now to the 1977 Examination, Petty's premise is this: he says that all candidates were required to register for the Examination not later than May 1, and he did so. He had a full-time job and, as part of a personal study plan, he elected to concentrate on the Essay Examination. He says he did that in reliance on a Board practice to offer a re-examination on the MBE in February of the year following the three-part Examination. His rationale was that if he failed the Essay Examination, he would have to wait a full year for another opportunity to retake it but, if he passed the Essay part and failed the MBE, he could sit for the latter test some six months later (i. e., in February 1978).

On May 26, 1977, the Board decided that an MBE would not be given in February of 1978. Petty was informed of this on June 20, 1977, when, he says, he had completed a large part of his study program and did not have sufficient time remaining to make an accommodation in the plan. As we have observed, Petty failed the MBE by some eleven points.

II

Petty makes three arguments in this appeal from a ruling by the Board denying him any relief. First, he says that the Board violated his due process rights by not scheduling an MBE Examination in February 1978; next, he contends that the Board violated his right to equal protection of the laws by giving only a Legal Ethics Examination in February 1978; and, lastly, Petty argues that he is entitled to discover the names of persons who failed the 1977 Examination in Legal Ethics.

■ Before reviewing these several contentions, we hold that Petty's application for admission in Delaware on the basis of the score he achieved in an MBE examination given in Pennsylvania is without merit, for the reasons stated in *Hudson*, supra.

■ As to the due process argument, Petty concedes that the Board had the power to eliminate the February MBE Examination and that such a change may have had a rational relationship to the Board's duties. His challenge focuses on the timing of the change, not the merits thereof. As we see it, however, the date on which the Board made its announcement is not controlling because Petty should have known that a February test would not be offered, unless the Board *affirmatively* exercised its discretion to give it. Indeed, *BR–52.5* specifically provided that the "Board *may, in its discretion . . . permit a reexamination* of designated portions during February . . . ." (Emphasis added.)

While a February MBE had been given in three prior years, Petty's decision to base his study program on his own guess that the Board would again act affirmatively was a gamble on his part, not a due process violation by the Board. For that reason, the Board's decision did not result in manifest unfairness to him. *In re Reardon*, 378 A.2d 614 (1977). In short, to give or not give a February MBE test was discretionary with the Board, and Petty did not have a legal right to rely on his assumption that the Board would again exercise its discretion in the way that he anticipated.

■ Petty also argues that the Board violated his right to equal protection of the laws by giving an Examination on Ethics in February 1978 for persons who had failed that subject at the 1977 Examination.[2] We think, however, that the differing nature of the MBE and Legal Ethics Examinations

---

2. The Examination in Legal Ethics was permitted by order of this Court, dated December 29, 1977 and entered on recommendation of the Board, making various changes in the Rules of the Court and of the Board relating to the admission to practice law.

permitted the Board to treat them differently. Thus, the function of the MBE is to measure professional competence, that is, to identify candidates who demonstrate the minimum professional competence in the subjects tested. Compare *Reardon*, supra at page 617. *BR–52.3* specified the subjects to be tested, as the Board determined, over a wide range of substantive and procedural law (including, agency, constitutional law, contracts, corporations, criminal law, and so on).

As we have already noted, the MBE is administered on a national basis by the National Conference of Bar Examiners. The Legal Ethics Examination, on the other hand, is administered entirely on a Delaware basis, and tests only under the Code of Professional Responsibility and related legal ethics.

Given the difference in scope of the subject matters in the respective testings and in the administration of the Examinations, it was not unreasonable (in the constitutional sense) for the Board to have permitted a retesting in Legal Ethics without permitting retesting of the MBE.

### III

While we have concluded that the Board did not violate Petty's due process or equal protection rights, we recognize that there may have been some unfairness as a result of the Board's decision, announced after May 1, 1977, not to authorize a February 1978 MBE test. May 1 was the date by which all candidates were required to have registered to take the Bar Examination and, by that date, all of the ground rules under which it was to be given should have been finalized.[3]

To avoid any unfairness to Petty arising from the Board's action after May 1, 1977, we will suspend the Rules to the extent of permitting his passing scores achieved in the Essay and Ethics Examinations to be accepted by the Board for admission purposes and to require Petty to retake in Delaware only the MBE.[4] He must, of course, receive a passing grade in the MBE to be admitted here.

\* \* \* \* \* \*

In view of the ruling made herein, we regard Petty's request for discovery as moot but, in any event, he has not made any showing (and, clearly, not a *prima facie* showing) of impropriety by the Board; in the absence of such showing he is not entitled to explore for it among the Board's administrative processes.

---

3. As a matter of policy, the Board will be directed not to change its Rules or policies governing the examination, reexamination and certification of candidates, in any specific year, after the final date for the filing of applications to take the Bar Examination in that year.

4. We note that Petty preserved his right by filing the petition with the Board. The Rule now requires that such a petition be filed within thirty days. See *BR–52.6*.