In re Petition of Kara B. RUBENSTEIN
(Applicant No. 33).

Supreme Court of Delaware.

Submitted: Jan. 25, 1994.
Decided: Feb. 28, 1994.

J.R. Julian of J.R. Julian, P.A., Wilmington, for petitioner Kara B. Rubenstein.

Josy W. Ingersoll (argued), and William J. Wade, Wilmington, for Board of Bar Examiners.

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

HOLLAND, Justice:

Kara B. Rubenstein ("Rubenstein") has petitioned this Court, pursuant to Supreme Court Rule 52(f). Rubenstein contends that, under the facts and circumstances presented, this Court should direct the Board of Bar Examiners ("Board") to issue a certificate that she is qualified for admission to the Delaware Bar. Supr.Ct.R. 52(e); B.R. 52.1. This Court has concluded that Rubenstein's petition for relief should be granted.

### Facts

Rubenstein received a bachelor's degree from the University of Pennsylvania and a *juris doctorate* from the Temple University Law School. Rubenstein first applied for admission to the Delaware Bar in 1990. She made subsequent applications in 1991, 1992, and 1993. In 1990, Rubenstein did not achieve a passing score on the Professional Conduct Examination or either portion of the Delaware Bar Examination, i.e., the essay section or the Multistate Bar Examination ("MBE") section. *See* B.R. 52.4 and 52.5. In 1991, Rubenstein passed the separate Professional Conduct Examination, but once again did not pass the Bar Examination. In 1992, Rubenstein achieved a passing score of 137 on the MBE section, but failed the Bar Examination by not achieving a passing score on the essay section.

From 1989 to 1990, Rubenstein served as a law clerk to the President Judge of the Delaware Superior Court. In the fall of 1990, Rubenstein was certified under Supreme Court Rule 55. That rule provides for limited permission to practice law in Delaware's courts as a part of certain public programs.

In 1990, in accordance with the limited practice provisions of Rule 55, Rubenstein became employed by the Department of Justice of the State of Delaware as an Assistant Deputy Attorney General. Rubenstein worked as an attorney in that capacity for a period of two years until December 1992.[1] As an Assistant Deputy Attorney General, Rubenstein prosecuted driving under the influence and other criminal cases in the Court of Common Pleas in New Castle County. She also appeared in the Superior Court on habitual offender motions in motor vehicle cases and on motions to reinstate motor vehicle licenses.

The record before the Board included evidence of Rubenstein's competence and ability to practice law in the Delaware Superior Court and the Court of Common Pleas during her tenure as an Assistant Deputy Attorney General. That evidence included letters from the Judge she clerked for in the Superior Court, as well as letters from several other judges she had appeared before in the Superior Court and the Court of Common Pleas. An experienced member of the Dela-

---

1. The record reflects that the sole reason for the termination of Rubenstein's employment was her failure to pass the Bar Examination.

ware Bar, who was frequently Rubenstein's courtroom adversary, wrote to the Board on her behalf, as follows:

> In permitting the admission of an appli-. cant to the Delaware Bar, the Board must always be concerned with whether or not the applicant can competently practice law in this state. That answer cannot always be gleaned from someone's test score. As a result of my unique opportunity to observe Kara Rubenstein practice for over a year in two of the busiest courts of this state under Supreme Court Rule 55, I can unequivocally state she is well qualified to do so.

In support of her petition, the Attorney General of Delaware also wrote to the Board that, as an Assistant Deputy Attorney General, Rubenstein was a "competent and diligent" practitioner and that he found it "inexplicable" that Rubenstein had been unable to pass the Delaware Bar Examination.

After three unsuccessful attempts to pass the Bar Examination, Rubenstein sought an expert's explanation for the anomalous dichotomy between her inability to pass the Bar Examination and her undisputed ability to function effectively as a prosecuting attorney in Delaware courts, pursuant to this Court's limited practice rule. Supr.Ct.R. 55. After careful testing, Rubenstein was advised that she suffered from a learning disability, which had been previously undiagnosed. The exact nature of the disability had no bearing on her intelligence or acumen but related exclusively to the means by which Rubenstein processed information.

### Rubenstein's 1993 Board Petition

In April 1993, Rubenstein filed a petition with the Board requesting an exercise of its discretion to permit her a fourth opportunity to take the Bar Examination. B.R. 52.8(e). Rubenstein's petition alleged that she suffered from a learning disability, which had been previously undiagnosed. In support of her petition, Rubenstein presented to the Board a report prepared by William F. Shaw, M.Ed. ("Shaw"), concerning his evaluation of Rubenstein's learning disability. Shaw's report stated, in part:

The 21 point discrepancy between the verbal and performance abilities suggest that her learning style is that of a linguistic, sequential processor of information rather than a simultaneous processor. In the latter information is presented all at one time rather than in a sequence. If client's tests are more similar to the latter, for example if the fact patterns are presented all at once and client has to come up with a solution, she will do less well than if she is able to develop a problem sequentially as she would do in her criminal prosecutor role.

Due to the large discrepancy between the verbal and performance abilities, the verbal measure is used as an expectancy of achievement as the Full Scale I.Q. represents a meaningless average. In this regard client's current measures of achievement are not significantly below her measure of expectancy, but the overlays of a learning disability and the learning processing difficulties still exist. The reader is reminded to once again look at the qualitative behavior observations during the reading tests. Moving one's head rather than to read with her eyes, especially for an individual with some superior abilities, speaks out boldly in terms of the diagnosis of a learning disability. In addition the observable mouthing of words as she reads, supposedly silently, is a further indication of an inefficient and maldeveloped reading process.

Shaw's report made the following recommendation to the Board:

> *In order to compensate for her disability, unlimited or at least extended time should be granted for the bar examination.* This is assuming that the Testing Committee, based upon the new information reported in this examination, would reconsider and allow her to take the test again. *The increased time allowed will grant more opportunity for client to read and reread items in order to give additional input* [emphasis added].

The Shaw report concluded with the observation that Rubenstein's learning disability would not impair her law practice. In fact, the report stated that Rubenstein "has a

facility for the practice of law and is encouraged to pursue that interest." In addition, Rubenstein supported her petition to the Board with a letter from the Deputy Attorney General who had supervised her Rule 55 practice. Her supervisor represented to the Board that Rubenstein's "learning disability had no discernible impact on her ability to practice law in the criminal courts, something the tests cannot show."

## Board's 1993 Response

On June 11, 1993, the Board informed Rubenstein that it had granted her petition to take the Delaware Bar Examination for a fourth time. The Board's letter to Rubenstein also stated that based upon the medical evidence of her learning disability, accommodations would be made for her to take the *essay* portions of the examination. Those accommodations consisted of the Board's permission for Rubenstein to take the essay section in a separate room and to have one additional hour for each three-hour essay session. The Board decided that Rubenstein would *not* be permitted additional time for the MBE section.[2]

## Rubenstein's 1993 Results

With the accommodation of additional time on the essay section, Rubenstein passed that portion of the 1993 Delaware Bar Examination. However, she received a score of 128 on the MBE, the examination she had passed in 1992 with a score of 137. That score was two points less than the minimum MBE score of 130 required by the rules of the Board. B.R. 52.4(c). Consequently, Rubenstein was informed that she had failed the 1993 Bar Examination.

Rubenstein petitioned the Board. She requested to be certified by the Board as being qualified for admission to the Delaware Bar, notwithstanding the two-point insufficiency of her MBE score in 1993. Rubenstein's petition was considered by the Board. Her peti-

tion was denied by the Board in a letter dated November 17, 1993.

## Standard of Review
### Rubenstein's Contention

■ Rubenstein has appealed to this Court for relief from the Board's action. Supr.Ct.R. 52. The Board's ruling would prevent Rubenstein from ever gaining admission to the Delaware Bar. Consequently, the Board's denial of Rubenstein's petition has affected her "substantial rights," as required by Supreme Court Rule 52(f). Therefore, it is appropriate for this Court to consider the merits of Rubenstein's petition for relief.

■ This Court will not set aside the determination of the Board as to an applicant's professional competence unless the applicant demonstrates fraud, coercion, arbitrariness, or manifest unfairness. *In re Reardon*, Del. Supr., 378 A.2d 614, 618 (1977). Rubenstein does not allege that the Board conducted itself in either a fraudulent or a coercive manner. Rather, she contends that the Board's decision to grant her additional time on the essays but not on the MBE section of the Bar Examination was both arbitrary and manifestly unfair.

Rubenstein argues that the Board's accommodations to her during the 1993 Bar Examination were an unreasonable response to her undisputed learning disability. Rubenstein asserts that she has demonstrated her professional competence by passing the essay section of the Bar Examination in 1993 and the MBE section of the Bar Examination in 1992. Accordingly, Rubenstein asks this Court to direct the Board to suspend the application of Board Rule 52.4(c), which requires an applicant to achieve specified minimum scores on *both* sections of the Delaware Bar Examination in the *same* administration of that test, and to certify her as qualified for admission to the Delaware Bar. *Compare In*

---

**2.** The Board's decision to permit Rubenstein's application to take the Bar Examination for a fourth time was conditioned upon her acceptance of its decision to grant her additional time only with respect to the essay section. The record reflects that under the circumstances, Rubenstein had no alternative. Rubenstein had re-

quested additional time to take the entire Bar Examination. When confronted with a Hobson's choice by the Board, Rubenstein's acquiescence cannot be fairly construed as a waiver of the right to contend that she should have been given additional time for the MBE.

*re Hudson*, Del.Supr., 402 A.2d 369, 371 (1979).

### Delaware Bar Admission Certification Requirements

■ No applicant can be certified by the Board as qualified for admission to the Bar of this Court unless he or she has: first, complied with each of the requirements of Supreme Court Rule 52; second, achieved a passing score on the Professional Conduct Examination; and third, achieved a passing score on the Bar Examination. B.R. 52.1. The Board acknowledges that Rubenstein has satisfied each of the requirements of Supreme Court Rule 52 and achieved a passing score on the Professional Conduct Examination.[3] Therefore, the only issue before this Court relates to Rubenstein's performance on the Bar Examination.

The Bar Examination consists of two sections: the Multistate Bar Examination ("MBE") administered by the National Conference of Bar Examiners and twelve essays on certain enumerated subjects, as determined by the Board. B.R. 52.4(b). "An applicant shall be deemed to have passed the Bar Examination if he [or she] achieves a scaled score of not less than 130 on the MBE and an average of not less than 65.0 on all of the twelve essay questions on the Bar Examination." B.R. 52.4(c). The latter provision is subject to the additional requirement that the applicant "shall not have received a grade of less than 65.0 on more than five of the said essay questions." *Id.*

### Rubenstein's Disability Board's Discretion Exercised Fourth Application Granted

Rubenstein failed the Bar Examination in three successive years. An applicant, who has failed to pass the Bar Examination three times, seeking to be afforded a fourth opportunity to take that test, has the burden of providing the Board with evidence:

(i) That there existed physical, emotional, or other good reason constituting mitigating circumstances for the applicant's failure to pass 1 or more of the prior examinations; and

(ii) That such reason, or reasons, have been resolved and the applicant knows of no impediment to his preparation for the fourth examination.

B.R. 52.8(e).

The Board was satisfied that the evidence presented by Rubenstein of her previously undiagnosed learning disability constituted a mitigating circumstance for her failure to pass the Bar Examination in the past. *Id.* This satisfied the Board rule's first requirement "[t]hat there existed physical, emotional, or other good reason constituting mitigating circumstances" for her failure to pass one or more of the prior examinations. B.R. 52(e)(i). Since Rubenstein's learning disability was of a continuing nature, the Board realized that it was impossible for her to attest to its resolution, which is the second requirement of the Board's rule regarding an application to take the Bar Examination for a fourth time. B.R. 52.8(e)(ii).

The Board properly recognized, however, that the continuing nature of Rubenstein's learning disability was not only (1) an improper basis to deny her petition to take the Bar Examination a fourth time but also (2) required it to make reasonable accommodations for her learning disability if she was permitted to take the Bar Examination for the fourth time. The Board decided to give Rubenstein time and one-third to take the essay section of the Bar Examination *but no additional time to take the MBE section.* Our review of the Board's action must necessarily involve a consideration of both the factual evidence presented to the Board and the applicable law.

### Bar Examinations Americans with Disabilities Act

The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. §§ 12101–12213

---

**3.** The Board does not dispute that Rubenstein is "a person of good moral character and reputation," Supr.Ct.R. 52(a), or that she is qualified for admission to the Delaware Bar in every re-

spect with the exception of her failure to pass both portions of the Bar Examination in one administration. B.R. 52.4(c).

(West Supp.1993), became effective on January 26, 1992. The United States Department of Justice promulgated regulations to implement the ADA's statutory mandate. 28 C.F.R. pts. 35–36 (1991). The Department of Justice also prepared a section-by-section analysis of its regulations. *Id.* In 1991, prior to the ADA becoming effective, the United States Department of Justice and the Equal Employment Opportunity Commission published the Americans with Disabilities Act Handbook.

The ADA has been described as a "national mandate to provide reasonable accommodations for disabled persons." Morrissey, *The Americans with Disabilities Act: The Disabling of the Bar Examination Process?,* The Bar Examiner, May 1993, at 9, 9. It "imposes new standards of conduct upon bar examiners and similar entities ... with respect to disabled individuals [who are] pursuing professional careers." *Id.* The extent to which the ADA applies to bar examinations has been the subject of recent scholarly analysis. *See* Rogers, *The ADA, Title VII and the Bar Examination: The Nature and Extent of the ADA's Coverage of Bar Examinations,* 36 How.L.J. 1 (1993). The issues that confront boards of bar examiners in complying with the ADA have also been carefully considered by two special counsel to the National Conference of Bar Examiners. Fedo & Brown, *Accommodating the Disabled Under the ADA: The Issues for Bar Examiners,* The Bar Examiner, Aug. 1992, at 6.

The ADA provides that an individual is disabled if, *inter alia,* he or she has a physical or mental impairment that substantially limits one or more of his or her major life activities. 42 U.S.C.A. § 12102(2). Once such a disability has been established, the ADA generally requires the persons or entities designated by the Act to make reasonable accommodations or modifications for the disability. *See, e.g.,* 42 U.S.C.A. §§ 12112, 12131(2), 12182(b)(2)(A)(ii), 12184(b)(2)(A). Title II of the ADA provides:

> Subject to the provisions of this [title], no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities

of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C.A. § 12132.

Admission to the Delaware bar is governed exclusively by this Court. *In re Hudson,* Del.Supr., 402 A.2d 369 (1979). The application and testing procedures are administered by the Board, which is appointed by this Court. Supr.Ct.R. 51 and 52. The Board, as an instrumentality of this Court, constitutes a public entity within the meaning of Title II. *See* 42 U.S.C.A. § 12131(1); Supr.Ct.R. 51. *See also* Fedo & Brown, *Accommodating the Disabled Under the ADA: The Issues for Bar Examiners,* The Bar Examiner, Aug. 1992, at 6, 6. Consequently, as a public entity, the Board must make reasonable accommodations to prevent the *de facto* exclusion "which may occur when disabled but otherwise qualified individuals are limited by standard administrative or other operating procedures from participating fully in the examination process." Fedo & Brown, *Accommodating the Disabled Under the ADA: The Issues for Bar Examiners,* The Bar Examiner, Aug. 1992, at 6, 6.

The regulations implementing the ADA state that Title II is applicable to licensing and certification "programs." 28 C.F.R. § 35.130(b)(6). Title II and its regulations, however, contain no specific standards for the *administration* of bar examinations, or of other professional licensing tests. Nevertheless, specific guidance is available regarding the administration of examinations in the regulations promulgated to implement Title III of the ADA. Title III, in part, provides:

> *Any person* that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, *professional,* or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

42 U.S.C.A. § 12189 (emphasis added).

Title III of the ADA generally applies only to private entities. However, in the interpretive analysis of its Title III regulations, the United States Department of Justice has tak-

en the position that "[e]xaminations covered by this section would include a bar exam." ADA Handbook, III–100, Oct. 1991.[4]  *See* 28 C.F.R. § 36.309(a).  *See also Amicus Curiae* Memorandum of Law for the United States, at 4 n. 2, *Rosenthal v. New York State Bd. of Law Examiners*, (S.D.N.Y. Apr. 13, 1992) (No. 92 Civ. 1100).  At least one federal court has agreed with the Department of Justice's construction of the ADA by applying both Title II and III with regard to the administration of a bar examination.  *D'Amico v. New York State Bd. of Law Examiners*, 813 F.Supp. 217, 221 (W.D.N.Y.1993).[5]

*Additional Time*
*A Reasonable Accommodation*

■ The purpose of the ADA "is to place those with disabilities on an equal footing and not to give them an unfair advantage." *D'Amico v. New York State Bd. of Law Examiners*, 813 F.Supp. at 221.  *Compare Southeastern Community College v. Davis*, 442 U.S. 397, 413, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979) (Section 504 of the Rehabilitation Act of 1973).[6]  The integrity of the examination process has been an important consideration for the federal courts in reviewing the reasonableness of accommodations made by testing authorities pursuant to other disabilities legislation.  *See, e.g., Pandazides v. Virginia Bd. of Educ.*, 752 F.Supp. 696, 697 (E.D.Va.1990), *rev'd and remanded*, 946 F.2d 345 (4th Cir.1991).  The ADA also provides authority, for example, that a testing authority may refuse to provide an auxiliary aid or service to a disabled person if it

meets the burden of establishing "that offering [the] particular auxiliary aid would fundamentally alter the measurement of the skills or knowledge the examination is intended to test or would result in an undue burden."  28 C.F.R. § 36.309(b)(3) (1991).

■ A learning disability, such as Rubenstein's, is a condition which the ADA recognizes should be accommodated.  28 C.F.R. §§ 35.104(1)(i), 36.104(1)(i).  The regulations promulgated under Title III describe several kinds of accommodations that may be required in the examination process, as well as the limitations on such accommodations that may be applicable.  28 C.F.R. § 36.309 (1991).  Those regulations specifically state that "[r]equired modifications to an examination may include changes in the *length of time* permitted for completion of the examination."  28 C.F.R. § 36.309(b)(2) (emphasis added).

The record reflects that the Board found that Rubenstein had established that she was a person with a learning disability.  The ADA Handbook provides that "[e]xaminers may require evidence that an applicant is entitled to modifications."  ADA Handbook, III–102, Oct. 1991.  The ADA Handbook suggests that appropriate documentation for a requested accommodation "might include a letter from a physician or *other professional.*"  *Id.* (emphasis added).

In this case, Rubenstein requested the Board to accommodate her learning disability by allowing her additional time to take the

---

**4.** The Justice Department's analysis also states:

> Section 309 [42 U.S.C.A. § 12189] is intended to fill the gap that is created when licensing, certification, and other testing authorities are not covered by section 504 of the Rehabilitation Act [29 U.S.C.A. § 794] (West Supp.1993) or title II of the ADA.  Any such authority that is covered by section 504, because of the receipt of Federal money, or by title II, because it is a function of State or local government, must make all of its programs accessible to persons with disabilities, which includes physical access *as well as modifications in the way the test is administered, e.g., extended time....* *Id.* (emphasis added).

**5.** In *D'Amico*, the court pointed out that the ADA defines the term "person" as used in the exami-

nation and courses provision of Title III as having the same meaning given the term in Section 701 of the Civil Rights Act of 1964.  *Id.* (citing 42 U.S.C. § 12111(7)).  In the Civil Rights Act, "person" is defined as including governments and governmental agencies.  *Id.* (citing 42 U.S.C. § 2000e(a)).

**6.** The position of the United States Department of Justice, stated in the ADA Handbook, is that the standards of Title V of the Rehabilitation Act of 1973 will apply unless the ADA or its regulations explicitly adopts a different standard.  ADA Handbook, II–11, III–12, Oct. 1991.  *See* 28 C.F.R. §§ 35.103(a), 36.103(a) (1991).  *See also* 42 U.S.C.A. § 12201(a) ("[N]othing in this chapter shall be construed to apply a lesser standard than the standards applied under Title V of the Rehabilitation Act of 1973.").

Bar Examination. She documented her request with Shaw's expert report. Shaw's report made the following recommendation to the Board:

> In order to compensate for her disability, unlimited or at least extended time should be granted for the bar examination. This is assuming that the Testing Committee, based upon the new information reported in this examination, would reconsider and allow her to take the test again. *The increased time allowed will grant more opportunity for client to read and reread items in order to give additional input* [emphasis added].

Shaw's report recommended that Rubenstein be afforded additional time to take the Bar Examination. Shaw's professional recommendation was unqualified. It did not differentiate between the essay section and the MBE section of the Bar Examination with respect to Rubenstein's need for additional time to accommodate her learning disability.

### Time Afforded Rubenstein
### An Inconsistent Accommodation

This Court has held that appellate review regarding an exercise of the Board's discretion requires a determination that the factual findings are supported by the record and that the Board's decision is the product of a logical and orderly deductive process. *In re Green*, Del.Supr., 464 A.2d 881, 887 (1983). It has been observed that the *sine qua non* for bar examiners' compliance with the ADA "[is] principally a matter of making reasonable accommodations for disabled individuals to take the examination and to communicate with the licensing board." Fedo & Brown, *Accommodating the Disabled Under the ADA: The Issues for Bar Examiners*, The Bar Examiner, Aug. 1992, at 6, 6–7. The same authors astutely note that courts are more likely to uphold bar examiners' decisions if they produce an evidentiary record showing that reasonable efforts were made to accommodate a disabled applicant's needs. *Id.* at 8. *Accord Petition of Nenno*, Del. Supr., 472 A.2d 815, 818 (1983) (Board's decision must be supported by substantial evidence).

In Rubenstein's case, the record is devoid of any evidentiary basis to support the Board's decision to disregard the recommendation of Rubenstein's expert. In addition, the Board's ultimate decision does not reflect that it was the product of an orderly and logical deductive process. *In re Green*, 464 A.2d at 887. The Board's decision to afford Rubenstein additional time (one-third) to take the essay section but no additional time to take the MBE section of the Bar Examination, without any explanation, was internally inconsistent. The Board's action was also inconsistent with the MBE guidelines established by the National Conference of Bar Examiners.

### Multistate Bar Examination
### Task Force on Disabled Applicants

The MBE portion of the Delaware Bar Examination is "administered by the National Conference of Bar Examiners." B.R. 52.-4(b). In October 1990, the Board of Managers of the National Conference adopted the following revision to Standard 22 of the Code of Recommended Standards for Bar Examiners:

> Without impairing the integrity of the examination process, the bar examining authority should adopt and publish procedures allowing applicants with documented disabilities to have assistance, equipment or additional time as is reasonably necessary under the circumstances to assure their fair and equal opportunity to perform on the examination.

Smith, *NCBE Guidelines For Testing Disabled Applicants*, The Bar Examiner, Feb. 1991, at 28, 28. The revision to Standard 22 was proposed by the National Conference of Bar Examiners Task Force on Disabled Applicants. *Id.* That Task Force also developed "guidelines for jurisdictions reviewing requests for special accommodations for disabled applicants," i.e. *Considerations in Testing Applicants with Disabilities. Id.*

The work of the Task Force was reported upon by Jane Peterson Smith, the Director of Testing of the National Conference of Bar Examiners. *Id.* According to Smith:

The most difficult issue the task force considered was the amount of extra time to allow for disabled applicants, particularly for those with learning disabilities. The task force concluded that time and one-half was an appropriate accommodation for most disabled applicants because there is evidence that the Multistate Bar Examination (MBE) is not a "speeded" examination.

The Task Force on Disabled Applicants also designed a standardized application form for bar examiners to use for those persons requesting testing accommodations. *Id.* at 30–31 (Appendix I and II). That form is particularly instructive in Rubenstein's case. The choices in Section V, "Accommodations granted for the Multistate Bar Examination," regarding "[e]xtra testing time" are: time and one-half; double time; more than double time; and other. (Appendix II). The form also includes a separate Section VI, which relates to "[a]ccommodations granted for the rest of the bar examination," e.g., the essays. *Id.*

### Board's Decision
### Manifestly Unfair

The regulations implementing the ADA recognize additional time for taking the examination as one of the specific accommodations which should be made for bar applicants with a learning disability. After careful consideration, the Task Force on Disabled Applicants of the National Conference of Bar Examiners concluded that *time and one-half* to take the MBE was an appropriate accommodation for most applicants with learning disabilities. The Board's decision to deny Rubenstein additional time to take the MBE in 1993 is inconsistent with the recommendations of Rubenstein's expert, the ADA regulations, and the conclusions of the National Conference of Bar Examiners' Task Force on Disabled Applicants.

■ The fact that Rubenstein passed the MBE in 1992 without additional time, notwithstanding her then undiagnosed learning disability, did not constitute a rational basis for denying her additional time to take the MBE in 1993, after her learning disability

became known. Although this Court recognizes the exemplary and professional manner in which the Board generally discharges its important responsibilities, the Board's decision to deny Rubenstein *any* additional time to take the MBE portion of the 1993 Bar Examination was not supported by the record. That decision was not the product of a logical deductive reasoning process and was manifestly unfair to Rubenstein.

### Equitable Remedy
### Rubenstein's Petition Granted

■ Having determined that the Board's decision to deny Rubenstein any additional time to take the MBE portion of the 1993 Bar Examination was manifestly unfair, this Court must consider an appropriate and equitable remedy. Since Rubenstein passed the essay portion of the Bar Examination in 1993, when her learning disability was properly accommodated with additional time to take that test, it would be inequitable to require her to take that section of Bar Examination again. If Rubenstein was permitted to retake only the MBE portion of the Bar Examination, with additional time, this Court would have to direct a waiver of the requirement that the essay and MBE sections both be passed in one sitting. B.R. 52.4(c). *In re Hudson,* Del.Supr., 402 A.2d 369, 371 (1979). The record reflects, however, that Rubenstein has already demonstrated her ability to pass the MBE section of the Bar Examination in a separate sitting, notwithstanding her disability, in 1992.

The Bar Examination tests for minimal competence to practice law. *In re Reardon,* Del.Supr., 378 A.2d 614, 617 (1977). Rubenstein has demonstrated her competence to practice law by passing both the essay section and the MBE section of the Bar Examination, albeit on separate occasions. *See* B.R. 52.4(c). Rubenstein's competence to practice law has also been attested to by the members of the Delaware Judiciary she practiced before pursuant to Rule 55, the Attorney General, and other members of the Delaware Bar who are familiar with her legal abilities. *Accord Petition of Golby,* Del. Supr., 375 A.2d 1049, 1050 (1977).

The relief requested in Rubenstein's petition implicates Board Rule 52.4(c), which implements "one aspect of this Court's exclusive right to govern the practice of law—the admission of persons to the Bar." *Petition of Nenno*, Del.Supr., 472 A.2d 815, 819 (1983). This Court alone is responsible for such matters. *Id.* We have concluded that, under the unique and limited circumstances here, Rubenstein's petition properly invokes this Court's inherent authority to suspend the requirement of Board Rule 52.4(c) that both sections of the Bar Examination be passed during one sitting.[7] Such action does not compromise either the integrity of the administration or the high standards of the Delaware Bar Examination. *Compare In re Hudson*, Del.Supr., 402 A.2d 369, 371 (1979); *In re Fischer*, Del.Supr., 425 A.2d 601, 602 (1980). Nor do we intend any criticism of the Board, which attempted in good faith to comply with the evolving standards of the ADA. Our ruling simply represents the correction of manifest unfairness under unusual circumstances involving an applicant who has exhausted every remedy available to her.

### Conclusion

Under the facts and circumstances of Rubenstein's case, equitable principles of justice require that the manifest unfairness to Rubenstein be remedied by granting her application for relief from the Board's actions. Therefore, under this Court's exclusive authority with respect to applications for admission to the Delaware Bar, the simultaneous passage requirements of Board Rule 52.4(c) are waived. The Board is directed to deliver to Rubenstein the certificate required by Supreme Court Rule 52(e). The mandate shall issue forthwith.

---

7. Nothing in this opinion should be construed as a repudiation of the reasonableness of the general requirement that both the essay and MBE portions of the examination should be passed at the same administration, particularly in order to prevent sequential concentration on one portion of the examination by "locking away" one portion of the examination in one year and concentration on the other portion in a following year. *In re Hudson*, Del.Supr., 402 A.2d 369, 371 (1979).

## APPENDIX I

### BAR EXAMINATION ACCOMMODATIONS FOR EXAMINEES WITH DISABILITIES ELIGIBILITY QUESTIONNAIRE

I. *Disability Status (check all that apply)*

  A. Are you:
      □ deaf?      □ hard of hearing?
      □ blind?      □ visually impaired?

  B. Do you have a:
      □ physical disability?
      Please explain_____
      □ specific learning disability?
      Please explain_____
      □ psychological disability?
      Please explain_____

  C. How long have you had your disability?
      □ Most of my life
      □ 1 year    □ 2 years    □ 3 years    □ 4 years    □ 5 years or more

> *PLEASE INCLUDE CURRENT DOCUMENTATION FROM A DOCTOR, PSYCHOLOGIST, PSYCHIATRIST OR OTHER APPROPRIATE PROFESSIONAL CERTIFYING YOUR DISABILITY.*

II. *Past Accommodations Made for Your Disability*

  A. In high school:
      Were you in a special school or program?       Yes □   No □
      Did you get special accommodations for classroom tests?   Yes □   No □
      Did you generally get extra time for classroom tests?   Yes □   No □

  B. Did you have special accommodations for taking the SAT or
      ACT examinations for admission to college?      Yes □   No □

  C. In college:
      Did you use disabled student services?       Yes □   No □
      Did you generally get extra time for exams?     Yes □   No □

  D. Did you have special accommodations for the LSAT?   Yes □   No □
      If yes, what accommodations? (Check all that apply)
      Formats:
      □ Braille    □ Tape    □ Large type
      Help:
      □ Reader    □ Recorder    □ Sign language interpreter
      □ Extra breaks/rest periods
      □ Extra testing time
      □ Other
      Please explain_____

  E. In law school:
      Did you use disabled student services?       Yes □   No □
      Did you generally get extra time for exams?     Yes □   No □

> *PLEASE INCLUDE DOCUMENTATION OF SPECIAL SERVICES AND TESTING ACCOMMODATIONS YOU RE-CEIVED IN LAW SCHOOL BECAUSE OF YOUR DISABILITY.*

III. *I certify the above statements to be true.*
  (Signed)_____(ID#)_____

> [ CONTINUED ON THE BACK. PLEASE SEE OTHER SIDE. ]

IV. *Accommodations Requested for the Bar Examination. (Check all that apply)*

Formats:
- ☐ Braille
- ☐ Tape
- ☐ Large type
- ☐ Regular

Help:
- ☐ Reader
- ☐ Recorder
- ☐ Sign language interpreter

☐ Extra breaks/rest periods

☐ Extra testing time. How much testing time? (Check below.)
- ☐ Time and a half
- ☐ Double time
- ☐ More than double time

☐ Other
Please explain _____

---

IN A SEPARATE LETTER, PLEASE DESCRIBE YOUR *SPECIFIC DISABILITY*, WHEN AND HOW IT WAS FIRST IDENTIFIED, AND THE ACCOMMODATIONS YOU ARE REQUESTING BECAUSE OF IT. MAIL THE LETTER, THIS FORM, AND THE REQUESTED DOCUMENTATION TO:

*Name and address here*

---

## APPENDIX II

---

**Applicant, please do not use the space below. For Bar Examiner use only.**

---

V. *Accommodations granted for the Multistate Bar Examination.*

Formats:
- ☐ Braille
- ☐ Tape
- ☐ Large type
- ☐ Regular

Help:
- ☐ Reader
- ☐ Recorder
- ☐ Sign language interpreter

☐ Extra breaks/rest periods

☐ Extra testing time. How much testing time? (Check below.)
- ☐ Time and a half
- ☐ Double time
- ☐ More than double time

☐ Other
Please explain _____

VI. *Accommodations granted for the rest of the bar examination*

Describe _____
_____
_____

VII. *Identification*

Test date _____

Test location _____

Test form _____