**In re Petition of John M. MURRAY.**

No. 482, 1994.

Supreme Court of Delaware.

Submitted: April 5, 1995.
Decided: April 21, 1995.

Eugene H. Bayard (argued), Wilson, Halbrook & Bayard and Stephen P. Ellis, Sergovic & Ellis, Georgetown, for petitioner.

Donald E. Reid, Morris, Nichols, Arsht & Tunnell, Wilmington, for Bd. of Bar Examiners.

Before VEASEY, C.J., HOLLAND and HARTNETT, JJ.

VEASEY, Chief Justice:

This matter is before the Court pursuant to Supreme Court Rule 52(f). Petitioner John M. Murray ("Murray") contends that the Board of Bar Examiners (the "Board") acted arbitrarily and unfairly in refusing to waive the requirements of the Board of Bar Examiners Rule 52.4(c) ("B.R. 52.4(c)")[1] and to issue a certificate of admission into the Bar of the State of Delaware. For the reasons set forth below, we hold that the Board acted properly in denying Murray's petition for a waiver from B.R. 52.4(c) and thus affirm the Board's decision. Furthermore, we decline to exercise our plenary authority to waive the one-sitting requirement of that rule.

## I. FACTS

The strength of Murray's academic and career background is beyond question.[2] Murray did not, however, enjoy success with the Delaware Bar Examination (the "bar exam"). His bar exam record in Delaware is as follows: In 1992 and 1993, he passed the Multistate Bar Examination (the "MBE") portions but failed the essay sections and the Professional Conduct Examination in both years; in 1994, he passed the bar exam's essay section and the Professional Conduct

---

1. That rule (now codified as Board of Bar Examiners Rule 13(a)) provided in relevant part: "An applicant shall be deemed to have passed the Bar Examination if he achieves a scaled score of not less than 130 on the MBE and an average of not less than 65.0 on all twelve essay questions on the Bar Examination...." B.R. 52.4(c). "[R]ule 52.4(c) ... requires an applicant to achieve specified minimum scores on *both* sections of the Delaware Bar Examination in the *same* administration of that test...." *In re Rubenstein*, Del.Supr., 637 A.2d 1131, 1134 (1994).

2. Murray received a B.A. from Providence College, an M.Acc. and a J.D. from Southern Illinois' College of Business and Law School respectively, and an LL.M. from Boston University Law School. Murray passed the Massachusetts, Pennsylvania, and New Jersey bar exams, and the Certified Public Accountants exam. Upon graduation from law school, Murray worked first at Ernst & Young as a tax consultant, then as an Attorney-Advisor (a federal clerkship) in the United States Tax Court, and finally as an associate at Young, Conaway, Stargatt and Taylor. He also taught a law course at Wilmington College and accounting classes at Delaware Technical Community College.

Examination but failed the MBE portion of the bar exam by one point. Thus, he has failed three times to pass the bar exam, which had been the effective limit applicable to him under the version of Board of Bar Examiners Rule 28(a) ("B.R. 28(a)") in effect when Murray filed his petition currently before the Court.[3]

After receiving notice of the July 1994 bar exam results, Murray sought certain information—a list of past petitions filed, granted, and denied under Board of Bar Examiners Rule 21 and Supreme Court Rule 52(f)—from the Board in order to prepare his petition. The Board replied that Murray should set forth specific grounds for his request. Upon receiving a response from Murray that the Board deemed inadequate, it denied Murray's request. The Board noted that, even if it were inclined to grant the request, it could not do so for it lacked a compilation of such data.

On November 17, 1994, the Board informed Murray by letter that his petition for admission was denied because a manual scoring of the July 1994 MBE, undertaken per Murray's request, still yielded a score of 129, one point below the minimum pass score of 130. Murray now seeks admission to the Bar of the State based either on a reversal of the Board's decision or on an exercise of this Court's plenary power to suspend B.R. 52.4(c).[4] Alternatively, he seeks an opportunity to retake only the MBE portion and, if successful, to be admitted to the Bar.

## II. THE BOARD'S REJECTION OF MURRAY'S PETITION

The gist of Murray's contention is that the Board acted arbitrarily and unfairly in refusing to waive B.R. 52.4(c). He argues that the Board's perfunctory application of that rule overlooked his overall competence, evidenced by his non-bar exam accomplishments. Murray relies principally on *In re Rubenstein*, Del.Supr., 637 A.2d 1131 (1994), in support of his argument.

The Board does not challenge Murray's qualifications in any respect except for his failure to pass, at one sitting, the entire July 1994 bar exam, including the MBE portion thereof. As to Murray's argument relating to waiver of B.R. 52.4(c), the Board claims that it has no authority to grant such a request. Further, the Board maintains that, even if it had such authority, Murray has not demonstrated any unique circumstances mandating waiver. We agree with the Board that Murray has not demonstrated any basis for waiving the requirements of B.R. 52.4(c).[5]

---

3. In an Order issued April 19, 1995, the Court has amended B.R. 28. The new rule states:

   **Rule 28. LIMITATION ON REEXAMINATION OPPORTUNITIES.**

   (a) **Four Opportunities.** Except as provided in subsection (b) below, no applicant shall be permitted more than 4 opportunities to pass the Bar and Professional Conduct Examinations. A failure of either such examination or a Professional Conduct Reexamination shall constitute 1 such opportunity. For example, if the applicant passed the Bar Examination but failed the Professional Conduct Examination, the applicant would have only 3 more opportunities to pass the Professional Conduct Examination.

   (b) **Discretionary Fifth Opportunity.** An applicant who has failed to pass the Professional Conduct Examination and the Bar Examination after 4 opportunities may be afforded a fifth opportunity, in the discretion of the Board, subject to such conditions with respect to additional study as the Board shall deem appropriate. An applicant seeking leave to be afforded a fifth opportunity shall have the burden of providing the Board with evidence by means of a petition under oath:

   (1) That there existed physical, emotional or other good reason constituting mitigating circumstances for the applicant's failure to pass 1 or more of the prior examinations; and

   (2) That such reason, or reasons, have been resolved and the applicant knows of no impediment to the applicant's preparation for the fifth examination.

   Thus, Murray is now eligible, as a matter of right, to take the entire bar exam without any further showing or leave of the Board or this Court.

4. Only because the Board's action may have prevented Murray from ever gaining admission to Delaware's Bar under the old B.R. 28 did we consider the merits of his petition. *See Rubenstein*, 637 A.2d at 1134 (stating that such a situation affects an applicant's "substantial rights," a prerequisite for review under Supreme Court Rule 52(f)).

5. Given this conclusion, we need not consider the Board's contention that it lacks authority to waive B.R. 52.4(c).

"This Court will not set aside [a] determination of the Board as to an applicant's professional competence unless the applicant demonstrates fraud, coercion, arbitrariness, or manifest unfairness." *Rubenstein,* 637 A.2d at 1134; *accord In re Reardon,* Del. Supr., 378 A.2d 614, 618 (1977).[6] The Court's review of claims alleging Board arbitrariness or unfairness [7] "requires a determination that the factual findings [of the Board] are supported by the record and that the Board's decision is the product of a logical and orderly deductive process." *Rubenstein,* 637 A.2d at 1138; *accord In re Green,* Del.Supr., 464 A.2d 881, 887 (1983).

In *Rubenstein,* petitioner discovered, after her third unsuccessful attempt at passing the Delaware bar exam, that she had a learning disability. 637 A.2d at 1132–33. Based on this finding, which was amply supported by objective evidence in the record of that case, the Board granted her request for additional time to take the essay portion, but denied the request as to the MBE section. *Id.* at 1134.

On appeal, this Court relied solely on the mandate of reasonable accommodation arising from the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213 (the "Act"), in holding that the Board erred in not also providing Rubenstein additional time to take the MBE portion. *Rubenstein,* 637 A.2d at 1137–38. Only after having determined that the Board acted unfairly did the Court turn to the issue of the appropriate remedy. The Court concluded that granting Rubenstein's request for admission was the most equitable remedy under the limited and unique circumstances of that case.[8] This Court stated:

Having determined that the Board's decision to deny Rubenstein any additional time to take the MBE portion of the 1993 Bar Examination was manifestly unfair, this Court must consider an appropriate and equitable remedy. Since Rubenstein passed the essay portion of the Bar Examination in 1993, when her learning disability was properly accommodated with additional time to take that test, it would be inequitable to require her to take that section of the Bar Examination again. If Rubenstein was permitted to retake only the MBE portion of the Bar Examination, with additional time, this Court would have to direct a waiver of the requirement that the essay and MBE sections both be passed in one sitting. . . .

*Id.* at 1139. The remedy accorded Rubenstein was not a general invitation for unsuccessful applicants to attempt circumventing B.R. 52.4(c). As the Court specifically stated:

We have concluded that, **under the unique and limited circumstances here,** Rubenstein's petition properly invokes this Court's authority to suspend the requirements of Board Rule 52.4(c) that both sections of the Bar Examination be passed during one sitting.

*Id.* at 1140 (emphasis added). Continuing in footnote 7, the Court explicated the rationale behind the necessity for a disciplined and standardized policy requiring both the essay and MBE portions of the bar exam to be passed at the same sitting:

Nothing in this opinion should be construed as a repudiation of the reasonableness of the general requirement that both the essay and MBE portions of the examination should be passed at the same administration, particularly **in order to prevent sequential concentration on one portion of the examination by "locking away" one portion of the examination in one year and concentration on the other portion in a following year.**

*Id.* n. 7 (emphasis added) (citing *In re Hud-*

---

6. *See also* Gene A. Noland, Annotation, *Court Review of Bar Examiners' Decision on Applicant's Examination,* 39 A.L.R.3d 719, 723, 726 (1971 & Supp.1994) (stating that courts generally do not review petitions from unsuccessful bar exam applicants absent a showing of fraud, coercion, unfairness, or arbitrariness); 7 AM.JUR.2D *Attorneys at Law* § 21 (1980 & Supp.1994) (same).

7. Murray does not contend that the Board acted fraudulently or coercively.

8. In providing a remedy for the finding of unfairness, the Court relied on its inherent power to suspend B.R. 52.4(c)'s one-sitting requirement to effect this result. *Id.* at 1139–40.

son, Del.Supr., 402 A.2d 369, 371 (1979)).[9]

There is no parallel between Murray's situation and Rubenstein's learning disability. Murray offers no explanation to justify his failure to pass the bar exam in one sitting. Accordingly, Murray's reliance on *Rubenstein* is misplaced. *See also In re Fischer,* Del.Supr., 425 A.2d 601, 602 (1980) (rejecting contention that barring admission into Bar based only on one-point deficiency on MBE portion is patently unfair).[10]

For the same reason, the Court denies Murray's entreaty that the Court exercise its equitable power to suspend the one-sitting requirement of B.R. 52.4(c). Exercise of that authority in *Rubenstein* was preceded by a finding that the Board acted unfairly in light of the Act. *See* 637 A.2d at 1139–40. Here, as discussed *supra,* Murray has not demonstrated that the Board acted unfairly or arbitrarily. Absent satisfaction of this antecedent, the remedy analysis in *Rubenstein* simply is inapplicable to Murray. In short, here there is no wrong to be remedied. Murray would have the Court engage in unstructured *ad hoc* waivers. This the Court declines to

do. Thus, the Court finds that the Board acted properly in denying Murray's petition for a waiver of B.R. 52.4(c) and refuses to effect the same under the Court's inherent authority. The Court also rejects Murray's remaining contentions.[11]

## III.  CONCLUSION

Due to Murray's failure to demonstrate that the Board acted arbitrarily or in a manifestly unfair manner in denying his request that the one-sitting requirement of B.R. 52.4(c) be waived, the Court **AFFIRMS** the Board's decision. Similarly, the Court **DECLINES** Murray's request for suspension of the one-sitting requirement.

Murray does not seek an opportunity to sit for the bar exam a fourth time, a remedy that might or might not have been available to him upon demonstration of "good cause" under the old B.R. 28(b).[12] *See Fischer,* 425 A.2d at 603–04. He requests in the alternative a chance to retake only the MBE portion of the bar exam. Granting such a request

9.  *Cf. In re Fischer,* Del.Supr., 425 A.2d 601, 602 (1980) ("generally, in any test, there obviously must be a passing line. We are satisfied ... 'that the requirement of a scaled score of 130 ... represents as accurate as possible a measure of the level of minimum competence necessary for admission to the Delaware Bar[ ]' ") (quoting petitioner's brief).

10.  The Court also rejects Murray's reliance on *In re Nenno,* Del.Supr., 472 A.2d 815 (1983), to support his waiver claim. The Court in that case expressly stated that the case should not be cited for waiver petitions. 472 A.2d at 819 n. 6 (noting that reliance on *In re Golby,* Del.Supr., 375 A.2d 1049 (1977), in support of waiver arguments is also misplaced). *Golby* is clearly *sui generis.* Thus, neither *Nenno* nor *Golby* constitute precedent supportive of waiver petitions. Nothing contained in *Rubenstein, Nenno* or *Golby* can be read as authority for the granting of such remedies to applicants with distinguished credentials who have missed any of the Board's criteria by even the slightest of margins absent circumstances equivalent to those presented in those cases.

11.  Murray makes several other arguments, all of which lack merit. First, he obliquely argues in his Opening Brief (but denies having made such a contention in his Reply Brief) that his MBE scores should be averaged. The Court has on a prior occasion rejected a similar request. *See In re Hudson,* Del.Supr., 402 A.2d 369, 370–71 (1979). As to Murray's claim that the Board improperly denied his discovery requests, because Murray made no independent showing of Board impropriety, this argument must fail. *See In re Petty,* Del.Supr., 410 A.2d 1021, 1024 (1980) (dictum) ("[w]e regard [petitioner's] request for discovery as moot, but, in any event, he has not made any showing (and, clearly, not a *prima facie* showing) of impropriety by the Board; **in the absence of such showing he is not entitled to explore for it among the Board's administrative processes[ ]**") (bold emphasis added). Finally, the claim that the MBE itself is unfair is without legal support and thus is rejected.

12.  Nonetheless, an ȯpportunity for a fourth sitting is available to Murray under the new B.R. 28(a). *See supra* note 3.

 

would be contrary to Delaware's policy of ensuring that applicants do not employ the "locking away" strategy to pass the bar exam. *See Rubenstein*, 637 A.2d at 1140 n. 7.[13] Thus, Murray's alternative request to retake only the MBE portion also is **DENIED.** Jurisdiction is not retained.

---

**13.** The Board persuasively distinguishes two cases in which this Court allowed petitioners to retake only portions of the bar exam because each case involved special circumstances relating to action taken by the Board which had an unfair effect of adversely affecting the petitioners. *See In re Petty*, Del.Supr., 410 A.2d 1021, 1024 (1980) (per curiam) (Board declared that a February reexamination opportunity, granted in previous three years, would not be allowed, but made announcement only after deadline for applications expired); *In re Reardon*, Del.Supr., 378 A.2d 614, 619 (1977) (Board canceled scores for one essay for some applicants but not for petitioners). Here, Murray has not demonstrated the existence of any such special circumstances.