**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| CHERYL KING, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| DEPARTMENT OF HEALTH | ) | C.A. No. K24A-04-001 RLG |
| AND SOCIAL SERVICES, | ) | |
| DIVISION OF MEDICAID AND | ) | |
| MEDICAL ASSISTANCE, | ) | |
| | ) | |
| Appellees. | ) | |

**Submitted:  August 1, 2024**
**Decided:  October 23, 2024**


**MEMORANDUM OPINION AND ORDER**


*Upon Appeal from a Decision of the Delaware Department of Health
and Social Services, Division of Medicaid and Medical Assistance*
**AFFIRMED**


Cheryl King, *Pro Se Appellant.*

Gabriela Kejner, Esquire, Department of Justice, Wilmington, Delaware.  *Attorney
for Appellee Unemployment Insurance Appeal Board.*


**GREEN-STREETT, J.**

1

## I. Introduction

Cheryl King appeals the decision of a Hearing Officer to uphold a determination by the Delaware Department of Health and Social Services – Division of Medicaid and Medical Assistance ("DMMA") to close Ms. King's food benefits case.[1] DMMA closed Ms. King's benefits for "refusal to cooperate" with a quality control inspection into Ms. King's case.[2] Ms. King contends she could not cooperate because of her disabilities.[3] As the Hearing Officer based his decision on substantial evidence and committed no legal error, his decision is **AFFIRMED**.

## II. Factual and Procedural Background

The Quality Control Unit ("QC") of DMMA conducts randomized reviews of clients receiving food benefits, randomly reviewing "80 to 90 cases each month as part of a federal requirement."[4] On December 20, 2023, QC sent a letter to Ms. King advising her that her account would be subject to review.[5] The letter informed Ms. King of the review process, notified her of a scheduled phone interview, and included

---

[1] Notice of Administrative Agency Appeal, D.I. 1 (Apr. 2, 2024).

[2] Answering Br. at 2.

[3] Opening Br. at 2.

[4] Tr. of Hearing before Hearing Officer ("Tr.") at 15.

[5] Id.

a list of forms Ms. King needed to complete and return to QC.[6]  Ms. King returned several of the completed forms to QC before the deadline, but failed to complete the Non-Household Member Form (the "Form").[7]  The Form must be completed by a third party who can verify the composition of Ms. King's household.[8]  Ms. King advised QC she did not have anyone who could fill out the Form on her behalf.[9]

During Ms. King's scheduled phone interview, a QC reviewer inquired about the Form.[10]  The QC reviewer asked if Ms. King's adult son could fill out the Form.[11]  Ms. King stated her son could not fill out the form, but declined to provide further explanation.[12]  At that time, Ms. King requested a Fair Hearing as provided by federal regulations.[13]  A QC manager later followed up with Ms. King regarding the Form, and Ms. King reiterated her son could not complete the Form.[14]  The QC

---

[6] Id.; see Ex. 2.

[7] Id. at 16.

[8] Id.

[9] Id.

[10] Id.

[11] Id. at 16-17.

[12] Id. at 17.

[13] Id.; see 16 Del. Admin. C. 5100-5000 (defining "Fair Hearing" as "an administrative hearing held in accordance with the principles of due process.").

[14] Id.

manager advised Ms. King of several alternative people who could complete the Form, including Ms. King's neighbors or postal workers. Ms. King declined those options.[15] Ms. King also renewed her request for a hearing on the matter.[16]

On January 5, 2024, QC formally requested to sanction Ms. King's benefits for failure to cooperate with QC's review.[17] DMMA applied the requested sanction and discontinued Ms. King's benefits on January 8th.[18] DMMA lifted the sanction and reinstated Ms. King's benefits on January 16th, pending the outcome of her hearing.

A Hearing Officer conducted a Fair Hearing on Ms. King's alleged failure to cooperate on February 21, 2024.[19] During the hearing, the Hearing Officer heard testimony from the QC manager and Ms. King.[20] Ms. King submitted several exhibits, including (1) a video of her son; (2) a letter stating her son suffers from a disability caused by a blow to the head; and (3) a video of her neighbors.[21]

---

[15] Id.

[16] Id.

[17] Id. at 18.

[18] Id.

[19] Id. at 1.

[20] Id.

[21] Id. at 26-27.

4

Ms. King proffered a number of reasons why she could not complete the Form. She explained her son's disability prevented him from completing the Form; she could not ask her neighbor to complete the Form because her neighbors are racist; and she could not ask the postal worker to complete the Form – as suggested by QC staff – because she "did not want to disclose [her] disability to others, or the fact that [she is] receiving food benefits."[22] Ms. King testified she could not get the Form completed because of her own disability.[23] Ms. King did not disclose what disability she suffers from, or why it affected her ability to find someone to complete the Form on her behalf.

The Hearing Officer issued his written decision on March 20, 2024, upholding DMMA's decision to close Ms. King's food benefits.[24] He found QC offered Ms. King "several opportunities to cooperate with having an individual not residing in the home who knows of the household composition, to complete the Non-Household Member Form [sic]."[25] The Hearing Officer concluded Ms. King's stated reasons for failing to complete the Form were unpersuasive.[26] Accordingly, he upheld

---

[22] Id. at 25-26.

[23] Id. at 25.

[24] R. at 8.

[25] R. at 16.

[26] Id.

DMMA's closure of Ms. King's benefits based on Ms. King's failure to complete the Form.[27]

Ms. King appealed the Hearing Officer's decision to this Court on April 2, 2024,[28] and the Court issued a brief schedule on May 14, 2024.[29] Ms. King filed her Opening Brief on May 28, 2024.[30] DMMA filed its Answering Brief on June 14, 2024.[31] The brief schedule established the deadline for Ms. King to file any reply brief as July 8, 2024.[32] Ms. King did not file a reply by that deadline, and did not request any allowance from the Court to file a reply out of time. The Court took Ms. King's appeal under advisement on the papers on August 1, 2024.

## III. Standard of Review

Any recipient of public assistance benefits "against whom an administrative hearing decision has been decided may appeal such decision to the Superior Court if the decision would result in financial harm to the appellant."[33] The appeal "shall

---

[27] Id.

[28] D.I. 1.

[29] D.I. 13.

[30] D.I. 14.

[31] D.I. 16.

[32] D.I. 13.

[33] 31 Del. C. § 520.

be on the record without a trial *de novo*."[34] This Court reviews the Hearing Officer's decision to ensure it is "supported by substantial evidence and free from legal error."[35] "The Court is not to replace the trier of fact in an appeal of an administrative board decision."[36] If the Hearing Officer's decision is supported by substantial evidence and free from legal error, it must be affirmed.[37]

## IV. Analysis

### A. Ms. King's potential ADA-related claim is unsupported by the Record

On appeal, Ms. King contends she did not refuse to cooperate, but rather could not cooperate because of her disability.[38] She posits the American Disabilities Act (the "ADA") entitles her to accommodation, and DMMA's failure to provide that accommodation during the review process amounts to discrimination.[39] Ms. King does not dispute the evidence relied upon by the Hearing Officer. Ms. King also

---

[34] Id.

[35] Ringgold v. Delaware Dep't of Health & Soc. Servs., 2018 WL 7021956, at *1 (Del. Super. Dec. 21, 2018).

[36] Id.

[37] Id.

[38] Opening Br. at 3.

[39] Id. at 2-3.

does not point to any incorrect application of law made by either DMMA or the Hearing Officer, save for her contention regarding discrimination.

"The ADA prohibits discrimination against individuals with disabilities in all areas of public life."[40] "The ADA provides that an individual is disabled if … she has a physical or mental impairment that substantially limits one or more of [ ] her major life activities."[41] To advance a claim under the ADA, Ms. King must show: (1) "she is a qualified individual with a disability;" (2) she is being "denied the benefits of some service, program[,] or activity by reason of [ ] her disability;" and (3) "the entity which provides the … program [ ] is a public entity."[42]

The record lacks any evidence, provided by Ms. King or otherwise, of Ms. King's disability. Beyond her testimony that her disability prevents her from finding someone to complete the Form, Ms. King provided no description of her disability. Further, Ms. King provided no evidence that she requested any accommodation from DMMA – aside from her implicit request that her failure to return the completed Form be ignored. Thus, the Court cannot ascertain whether Ms. King possesses a

---

[40] In re Murphy, 283 A.3d 1167, 1176 (Del. 2022).

[41] Petition of Rubenstein, 637 A.2d 1131, 1136 (Del. 1994); see also 42 U.S.C.A. § 12102(2).

[42] Genesis Healthcare v. Delaware Dep't of Health & Soc. Servs., 2018 WL 3096640, at *9 (Del. Super. June 22, 2018) (quoting Lincoln Cercpac v. Health & Hosp. Corp., 920 F.Supp. 497 (S.D.N.Y. 1996)).

disability as recognized by the ADA, or what accommodation DMMA could have provided.

Ms. King suggests her request that a DMMA staff member complete the Form on her behalf should have been treated as a request for a reasonable accommodation.[43] Without any information about Ms. King's disability or how it affects her, the Court cannot determine if Ms. King needed such an accommodation. DMMA informed Ms. King that its staff could not complete the Form for her, as DMMA could not verify Ms. King's "household composition."[44] Additionally, QC provided Ms. King with several alternative solutions to facilitate completion of the Form. Those suggestions included asking Ms. King's son to complete the Form; having Ms. King's neighbors complete the Form on her behalf; or having a postal worker complete the Form.[45]

Ms. King rejected all of those suggestions.[46] Of particular note, Ms. King declined QC's suggestion of a postal worker because she "did not want to disclose [her] disability to others, or the fact that [she is] receiving food benefits."[47] A review

---

[43] Opening Br. at 1.

[44] Tr. at 16.

[45] Id. at 16-17.

[46] Id.

[47] Id. at 26.

9

of the Form reveals it contains no mention of any disability or indication that Ms. King receives food benefits.[48] The Form only requires verification of Ms. King's address; the names of anyone else residing with Ms. King; the relationship between Ms. King and the person completing the Form; and the address of the person completing the Form. Even if the Form contained a reference to food benefits, or Ms. King's disability, Ms. King's disability does not prevent her from having a postal worker complete the Form. Rather, Ms. King's desire for privacy dissuaded her from asking a postal worker for assistance as QC suggested. The ADA seeks to prevent discrimination based on disabilities – not based on a desire for privacy.

Ms. King has failed to demonstrate that her undocumented disability prevents her from utilizing the suggestions provided by QC to have the Form completed. The Record shows QC requested a sanction on Ms. King's benefits because of her failure to complete the Form. As QC and DMMA did not discriminate against Ms. King based on any disability, and as Ms. King failed to show any additional accommodation was necessary, Ms. King's argument based on the ADA must fail.

B. **The Hearing Officer's decision was based on substantial evidence and free from legal error**

Ms. King does not contend the Hearing Officer lacked substantial evidence to support his decision. Upon review of the Record, the Court finds the Hearing Officer

---

[48] See Ex. 5.

based his decision on substantial evidence. Ms. King's benefits were closed because she failed to cooperate with a QC review. Ms. King failed to cooperate because she did not complete the Form. Her failure to complete the Form remains undisputed, and serves as sufficient grounds for the closing of her benefits. The Court also finds the Hearing Officer's decision free from legal error.

## V.     Conclusion

The Hearing Officer's decision is based on substantial evidence and free from legal error. Ms. King has failed to raise an appealable issue. Her argument based on the ADA fails because (1) Ms. King provided no documentation or description of her disability; and (2) QC attempted to work with Ms. King on finding a way for her to have the Form completed. Accordingly, the decision of the Hearing Officer is **AFFIRMED**.

**IT IS SO ORDERED.**

_____
Reneta L. Green-Streett, Judge